**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Arthur HENDERSON,**
**Defendant-Appellant.**

No. 76–4325.

United States Court of Appeals,
Fifth Circuit.

Jan. 6, 1978.

Marvin Jones, Dallas, Tex. (court-appointed), for defendant-appellant.

Kenneth J. Mighell, U. S. Atty., Judith A. Shepherd, H. Jay Ethington, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, Circuit Judge, SKELTON, Senior Judge,* and HILL, Circuit Judge.

SKELTON, Senior Judge.

Appellant, John Arthur Henderson, was convicted on an indictment charging him with possession of a small amount of marijuana in violation of 21 U.S.C. § 844(a), and was sentenced to a term of one year's imprisonment to run consecutively to the sentence he was then serving. He contends on appeal that the trial court erred in failing to declare a mistrial when the district attorney in his closing argument to the jury commented on appellant's silence at the time he was searched and the marijuana was found in his pants pocket. The appellant argues that such comments by the district attorney violated appellant's right and privilege under the Fifth Amendment to the Constitution to remain silent, that such was plain error, and that by reason thereof he is entitled to a new trial. For the reasons hereinafter stated, we reverse and remand the case for a new trial.

The appellant was serving a three-year sentence at the Federal Correctional Institution at Seagoville, Texas, for interstate transportation of a stolen motor vehicle, when the incidents involved in this case occurred. He was an orderly and performed cleaning and janitorial services in an assigned area at that institution. On the occasion in question he cleaned the radi- ator and picked up trash in the second floor TV room in the performance of his cleaning duties, and, while thus engaged, found an envelope containing a green substance which he recognized as marijuana. He put the envelope in his right front pants pocket and finished cleaning the TV room. Ten or fifteen minutes later he was in the process of returning a dust pan and radiator brush to the first floor where they were customarily kept when prison guard Pinckley stopped him in the hallway and searched him in the presence of officer Garrett. The guard found an envelope containing a small amount of marijuana (.63 grams or approximately 1/50 of an ounce) in appellant's pants pocket, initialed it, and gave it to officer Garrett who delivered it to a prison supervisor. The search was witnessed by other inmates.

When the search occurred and the marijuana was found, neither officer Pinckley nor officer Garrett asked appellant any questions and appellant did not say anything but remained silent. The appellant was taken immediately to an interrogation room where he was locked up. A guard was stationed at the door. Later the same morning, F.B.I. agent Byron Gigler arrived to question the appellant.

After agent Gigler gave appellant the *Miranda* warning and explained his rights to him, appellant signed the waiver of rights form Gigler presented to him and agreed to make a statement. Gigler told appellant that there was a possible drug violation that involved him, but did not tell appellant that his involvement was considered illegal. Appellant talked freely and openly with Gigler and told him where he found the marijuana and the surrounding circumstances as outlined above. He gave Gigler the following information and explanation as to what happened when he was searched: The guard did not ask him any questions; he was not given time to explain where or how he got the marijuana; at the time of the search he had not decided what to do with it; he was afraid that if he turned the marijuana in to the prison offi-

* Senior Judge of the United States Court of Claims, sitting by designation.

cials they would not believe he found it while engaged in his cleaning work; that he was afraid that if he gave the marijuana to the prison guard at the time of the search other inmates would have seen him do it and they would have said he was a "snitch", which meant he had told on someone "that had been busted on contraband"; and that if the inmates thought he was a "snitch" his life would have been in danger while he was in the penitentiary.

The same information and explanations were given by the appellant when he testified and answered questions of his counsel at the trial; and the testimony of agent Gigler corroborated the evidence given by appellant.

During the closing argument of the district attorney he commented on appellant's silence at the time he was searched, without objection by appellant's attorney, as follows:

"Number four, he didn't offer any explanation at the time that he was searched. Remember me asking him those questions, 'Did you say anything, did you have any conversation of any kind?' [1]

Now, he doesn't have to if he doesn't want to, but he didn't say anything like, 'I was just ready to turn that over to you' or 'Let's go around the corner so my buddies won't see me with this marijuana.' None of that. Think of those things.

Use your common sense. You don't have to leave your common sense here."

Article V of the Constitution provides, in pertinent part:

"No person _ _ _ shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law _ _ _."

The plain meaning of this provision of the Constitution, as applied to our case, is that the appellant had the constitutional right to remain silent at the time he was searched, and when he remained silent at that time he exercised such right by his silence. Since the Constitution conferred this right upon him, he was not required to give any reason for his silence at the time of the search. Furthermore, at that time no one asked him any questions nor gave him the *Miranda* warning, and, although he was in custody at that time, he had not been formally arrested for the possession of the marijuana.

This case is unique in that appellant's silence when searched is not a post-arrest silence, nor a silence occurring after receiving the *Miranda* warning, nor a silence that took place after questions were asked. However, the principles and rationale set forth in post-arrest cases involving district attorney questions and closing arguments relative to the silence of an accused at the time of, or immediately following his arrest, and before a *Miranda* warning is given, are applicable to the problem here.

It is elementary that the privilege against self-incrimination is a right guaranteed by the Constitution. In *Miranda v. Arizona*, 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694, 715 (1966) the Supreme Court stated:

"The privilege [against self-incrimination] has come rightfully to be recognized in part as an individual's *substantive right* _ _ _." (Emphasis supplied).

Chief Judge Brown of our Court pointed out in his dissent in *Sharp v. United States*, 410 F.2d 969, 972 (5 Cir. 1969):

"The principles of the Fifth Amendment as enunciated in *Miranda v. Arizona*, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16

1. The district attorney did not ask appellant these questions, but asked them of Government witness Pinckley during presentation of his case in chief before appellant had testified. During her testimony she stated that when she searched appellant "I didn't say anything." She testified as to appellant's silence when he was searched as follows:

Question by the district attorney:
"Did defendant Henderson, when you retrieved the envelope from his pocket and looked at the contents, did he say anything to you at that time?"
Answer:
"No, not at that time, no, no, nothing."

L.Ed.2d 694, make it abundantly clear· that an accused has an absolute right to remain silent. It is not an if-but-or sometimes partial privilege, it is a complete and absolute right. Here appellant Sharp exercised that right when he was questioned by the arresting officers. He declined to make any statement. The unequivocal exercise of that absolute right cannot now operate to his detriment. The Supreme Court made this clear in *Miranda*:

> 'In accord with this decision, it is not permissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.' 384 U.S. at 468 n. 37, 86 S.Ct. at 1625 n. 37, 16 L.Ed.2d at 720 n. 37.
>
> They restated it in *Schmerber v. California*, 1966, 384 U.S. 757 n. 9, 86 S.Ct. 1826, 1833 n. 9, 16 L.Ed.2d 908, 916 n. 9.
>
> 'I think the prior decisions of this Court and the Supreme Court make clear that no detriment may flow from the exercise of a Constitutional right.' " (at p. 973).

To the same effect is the statement of Mr. Justice Black, joined by the Chief Justice and Mr. Justice Douglas and Mr. Justice Brennan, in a separate opinion in *Grunewald v. United States*, 353 U.S. 391, 425, 77 S.Ct. 963, 984, 1 L.Ed.2d 931, 955 (1957) as follows:

> "I can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them."

In *Raffel v. United States*, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), the Supreme Court held that when a defendant testifies at his trial he can be cross-examined and impeached within the appropriate rules like any other witness. The case involved the problem of whether the defend-

ant at a second trial could be asked why he did not controvert the testimony of a prosecution witness at the first trial. The court held that the question was proper if relevant.

In *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) the Supreme Court held that it was not proper to cross-examine the defendant as to why he had asserted the Fifth Amendment plea before the grand jury with reference to a question he later answered at the trial. The Court ruled that such cross-examination should have been excluded because its probative value on the defendant's credibility was so negligible as to be far outweighed by its possible impermissible impact on the jury, and because his Fifth Amendment plea was consistent with his innocence and also with his later testimony at the trial.

In *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), the court followed *Grunewald*, holding that the defendant who was arrested for robbery and given the *Miranda* warning could not be cross-examined about his silence during police interrogation. The Court asserted that the assumption of inconsistency underlying *Raffel* was absent in *Hale*. The Government argued that since the defendant testified, it was permissible under *Raffel* to impeach his credibility by showing that he had remained silent at the time of his arrest. The Court did not agree, saying that if the Government fails to establish a threshold inconsistency between the silence of the defendant when arrested and later exculpatory testimony at the trial, proof of silence lacks any significant probative value on the credibility of the defendant and must be excluded, because it carries with it an intolerably prejudicial impact.

Prior to the *Hale* decision, this court followed *Raffel* in *Sharp v. United States*, 410 F.2d 969 (5 Cir. 1969) and in the first *Harp* decision, *United States v. Harp*, 513 F.2d 786 (5 Cir. 1975), reversed 536 F.2d 601 (5 Cir. 1976). However, as pointed out in *United States v. Impson*, 531 F.2d 274, 278 (5 Cir. 1976), we condemned the practice of

Government counsel's eliciting testimony that a defendant was silent when arrested, without explaining his actions, in a number of cases before *Hale* was decided. See *Walker v. United States*, 404 F.2d 900 (5 Cir. 1968), *Ivey v. United States*, 344 F.2d 770 (5 Cir. 1965) and *Helton v. United States*, 221 F.2d 338, 341–342 (5 Cir. 1955).

After *Hale* was decided, we followed its rationale in a number of cases. See *United States v. Impson*, 531 F.2d 274 (5 Cir. 1976); the second *Harp* decision, *United States v. Harp*, 536 F.2d 601 (5 Cir. 1976); and *United States v. Stevens*, 538 F.2d 1203 (5 Cir. 1976).

The facts and the issues in *United States v. Impson, supra*, are for the most part similar to those in the case before us. Because this is true, we feel we should discuss that case in some detail. There, the defendant Impson was riding in an automobile with the driver of the car. When stopped by an officer, the car was found to contain a quantity of counterfeit bills. The defendant made no statement at the time but remained silent. Thereafter, he was placed under arrest, indicted, and convicted by a jury of possession of counterfeit bills in violation of Title 18 U.S.C. § 472, and sentenced to ten years confinement. Upon appeal we reversed the case and remanded it to the trial court for a determination of probable cause as to the search of the car and his arrest. See, 5 Cir., 482 F.2d 197. Impson sought certiorari on the ground that prosecution testimony showed he made no statement at the time of his arrest. Certiorari was denied. See 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 246 (1973). On remand the trial court found probable cause for the search of the car and Impson's arrest. We affirmed in 506 F.2d 1055 (5 Cir. 1975). Impson petitioned for certiorari again, which was granted on the basis of *Hale*, which had just been decided. The Supreme Court vacated our judgment and remanded the case for our consideration in the light of *Hale*. See 422 U.S. 1031, 95 S.Ct. 2647, 45 L.Ed.2d 688 (1975). We then reversed and remanded the case for a new trial. See 531

F.2d 274 (5 Cir. 1976). That *Impson* decision of our court and the opinion in *Hale* are very much in point in the present case.

It appears that during the *Hale* trial, in an effort to discredit Hale's exculpatory statement when he testified in his own behalf, the prosecutor proved on cross-examination, over objection, that Hale remained silent when arrested. The Supreme Court reversed Hale's conviction because of the admission of this evidence. The case was not decided on constitutional grounds, but because "the probative value of respondent's pretrial silence in this case was outweighed by the prejudicial impact of admitting it into evidence." 422 U.S. at 173, 95 S.Ct. at 2135, 45 L.Ed.2d at 103 (1975).

In *Impson*, the evidence as to his silence when arrested was brought out by the prosecutor in his case in chief instead of on cross-examination. The same is true in our case.[2] We held in *Impson* that this did not make any difference. In that case, Impson gave exculpatory testimony after the prosecutor had finished his case in chief.

The same succession of events occurred in the instant case.

In both *Hale* and *Impson* the trial judge instructed the jury to disregard the evidence as to the silence of the accused when arrested, which evidence had been objected to, but refused to grant a mistrial. The trial court in *Hale* held that the instruction did not cure the error. See *United States v. Anderson*, 162 U.S.App.D.C. 305 at 312, 498 F.2d 1038, 1045 (1972), affirmed *sub nom.*, *United States v. Hale, supra*. We made the same ruling in *Impson*, and there pointed out that such an instruction might have emphasized and aggravated the error before the jury to the effect that the defendant was exercising his Fifth Amendment right to remain silent. We went on to hold in *Impson* that the curative instructions to the jury had no controlling significance.

In the case before us, the appellant did not object to the evidence of the prosecution witness that appellant remained silent when searched and does not complain of it

---

2. Appellant does not complain of this in his brief.

now. His complaint on this appeal is that the prosecutor committed error in his closing argument when he commented on appellant's silence when searched. This argument of the prosecutor was not objected to by appellant. In view of the decisions in *Hale* and *Impson* that objections of the accused and instructions from the court did not cure the error, we conclude that an objection to the prosecutor's closing remarks in the instant case was not necessary.

We held in *Impson* that it was immaterial that the silence of the accused occurred before he was given the *Miranda* warning. We reach the same conclusion in the instant case, since appellant's silence occurred before he was given the warning.[3]

The silence of an accused who has not been given a *Miranda* warning cannot be used against him to impeach his credibility, unless his silence is inconsistent with his innocence and inconsistent with his exculpatory statement given at the trial. Otherwise, it lacks significant probative value and carries with it an intolerable prejudicial impact. Judge Clark put it very well in *United States v. Harp*, 5 Cir., 513 F.2d 786, 790 (1975) when he said:

"Pragmatically, we recognize that an aura of guilt is popularly associated with an accused's exercise of the right to remain silent. Therefore, this cautionary note is apropos: it is the rare and exceptional case where comment on silence is permissible. Total inconsistency is the criterion. If any rational explanation for the defendant's invocation of his Fifth Amendment privilege exists, the prosecution's impeachment of use of a failure to speak would be error. This safeguard assures that collateral use is for the purpose of impeaching matter the defendant has put in dispute, and not for subtly encouraging a jury to infer guilt from silence."

Applying these principles to our case, we conclude that appellant's silence at the time he was searched was consistent with his innocence and consistent with his statement to F.B.I. agent Gigler and with appellant's testimony at the trial. His silence was consistent with the following logical explanations he made to Gigler and in his testimony at the trial. The guard who searched him did not question him or give him time to explain how he came into possession of the marijuana; he had not decided what to do with the marijuana at the time he was searched as he was afraid that if he turned it in to the prison officials they would not believe he found it; that he feared for his own safety if he voluntarily delivered the marijuana to the guard, as other inmates watched the guard search him and would have regarded him as "snitching" on them, as 50 to 60 percent of them had been convicted on narcotics charges; that the life of a "snitch" in a penitentiary is not very healthy. The appellant gave these explanations the first time he was given an opportunity to do so by agent Gigler a short time after the search.

The obvious purposes of the prosecutor in commenting on appellant's silence was to convey the impression to the jury that he was guilty or else he would not have remained silent when searched, and also to suggest that his later explanation was fabricated. These remarks of the prosecutor were highly prejudicial, especially when coupled with his statement that appellant did not answer his questions about his silence, when no such questions were asked appellant but were asked government witness Pinckley. In this regard, it appears that the district attorney was giving unsworn testimony to the jury outside of the record.

Even if the prosecutor commented on appellant's silence for the purpose of impeach-

---

**3.** The Supreme Court recently held in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) that it is unfair and a lack of due process under the Fourteenth Amendment for the silence of an accused to be used against him for impeachment purposes *after* he has been told

in a *Miranda* warning that he has a right to remain silent, and that while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings.

ing his credibility as to his subsequent explanations, we hold that the comments were improper and plain error, because appellant's silence lacked significant probative value on his credibility, and under these circumstances any reference to it carried with it an intolerably prejudicial impact. See *Hale, supra,* 422 U.S. 171 at 179, 95 S.Ct. 2133 at 2138, 45 L.Ed.2d 99 at 107.

In view of our conclusions stated above, we do not reach the other questions raised by appellant.

The case is REVERSED and REMANDED for a new trial.