**UNITED STATES of America, Appellee,**

v.

**Claude WOODY, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Ricky CARR, a/k/a Gerald Williams, a/k/a Accie Williams, Appellant.**

**Nos. 81–2444, 81–2451.**

United States Court of Appeals, Eighth Circuit.

Submitted July 16, 1982.

Decided Oct. 19, 1982.

Certiorari Denied Jan. 24, 1983.

See 103 S.Ct. 830.

Rehearing Denied Nov. 23, 1982.

Thomas E. Dittmeier, U. S. Atty., Kevin F. O'Malley, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Charles M. Shaw, Shaw, Howlett & Schwartz, David A. Shaller, Clayton, Mo., for appellants.

Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

PER CURIAM.

On December 9, 1981, a jury found Claude Woody and Ricky Carr guilty of robbing the United States Postal Savings & Loan Association in St. Louis, Missouri, in October of that year. The district court sentenced them to prison terms of twelve and eighteen years, respectively, under 18 U.S.C. § 2113(a). Both men appeal their convictions alleging the trial court erred in: (1) denying their motions for severance of the joint trial, in violation of the constitutional guarantee of a fair trial; (2) denying their motions to suppress identifications by Jack Tracy, the teller who handed over the money and who identified them in a show-up shortly after the robbery, in violation of constitutional due process protections; and (3) denying their motions to suppress their out-of-court statements made to law enforcement personnel after arrest while they were allegedly intoxicated, in violation of their constitutional rights to remain silent. We find no error and affirm both convictions.

The essential facts are as follows: Two men entered the savings and loan around 3:25 p. m. on October 9, 1981. The branch manager, Raymond Brodzinski, was suspicious because he had not seen them in the branch before. He activated a surveillance camera which took a still photograph of the men as they stood at Jack Tracy's teller window. Tracy testified at trial that the shorter of the men, who had a black and red CPO jacket draped over his right arm and whom Tracy identified as Woody, demanded money and instructed Tracy not to signal anyone or he would "shoot * * * everybody in the place." The taller man, whom Tracy identified as Carr, apparently stood silent beside Woody looking around the premises. Tracy put over $2,500 from his cash drawer on the counter, which Woody took with his left hand and placed in his pockets. Woody and Carr then walked quickly out the west door of the savings and loan. Tracy's testimony was corroborated by the testimony of

Ginny Willie, the teller working at the window next to Tracy's.

Shortly after the robbery, St. Louis police apprehended Woody and Carr a few blocks from the savings and loan as they exited a men's room in the Atlas Employment Agency (Labor Pool). Police found over $1,000 on Carr, and over $1,500 and a black and red CPO jacket hidden in a toilet tank in the men's room. Soon after the arrest, Brodzinski, the branch manager, noticed the crowd at Atlas, ran to where the police were holding Woody and Carr, and immediately stated that they had robbed the savings and loan. The police took the suspects back to the savings and loan in a police van. Tracy viewed them in the van and identified them as the robbers.

FBI agent John Joyce interviewed Woody and Carr separately in the burglary and robbery section of the St. Louis City Police Department between 5:00 and 6:30 p. m. on the same day. Woody signed a statement, which was handwritten by Joyce, admitting commission of the robbery. This statement in no way implicated Carr. Carr made a separate oral statement, not recorded, that he had not been in the savings and loan since 1973. Both statements were introduced at trial.

On appeal, Woody and Carr raise substantially identical arguments. We dismiss each of them in the order raised.

■ First, Woody and Carr contend that the district court erred in denying their separate motions for trial severance. They assert that their defenses were inconsistent and antagonistic, making their joint trial inherently prejudicial. We find no such inconsistency or antagonism. Woody's defense rested upon his alleged lack of intent to rob the savings and loan, even though he admitted to temporarily taking the money after a "misunderstanding" with the teller. Woody testified that Carr was with him in the savings and loan, but in no way implicated Carr as a participant in the activities therein. Carr presented no direct evidence in his defense. Even assuming Carr's theory of defense was that he was not in the savings and loan on October 9, 1981—as

reflected in his pre-trial oral statement—or that he was there but did not participate in the robbery, these theories are not inconsistent or antagonistic to Woody's defense. Woody's testimony as to the *facts* (i.e. Carr's presence) may have been contrary to Carr's undeveloped theory of absence, but the defenses themselves did not conflict: the jury could have found that Carr was not in the savings and loan *and* that Woody did not have the requisite intent to commit robbery.

■ Woody and Carr next assert that the show-up before witness Tracy shortly after their arrest was suggestive and unnecessary, and therefore the use of the identifications he made then and at trial violated their due process rights to a fair trial. Tracy's out-of-court identification occurred within an hour of the robbery. The evidence could support a finding that officers led Tracy to believe they had apprehended the robbers and that he was shown Woody and Carr handcuffed in a police van with only a uniformed officer also in the van. This procedure was suggestive to Tracy, and was to a degree unnecessary, although an immediate identification by Tracy was desirable for the police to decide if they needed to pursue other suspects while the trail was still fresh. Given Tracy's opportunity to clearly observe the robbers, their direct dealing with him at the time of the offense, his prior description of the robbers, the certainty of his identification, and the short time between the robbery and his identification, however, we find that this identification was reliable. In such circumstances, use of the out-of-court identification and Tracy's subsequent in-court identification did not violate the due process rights of Woody or Carr. *Manson v. Brathwaite,* 432 U.S. 98, 113–114, 97 S.Ct. 2243, 2252–53, 53 L.Ed.2d 140 (1977); *United States v. Hadley,* 671 F.2d 1112, 1115 (8th Cir. 1982). *See also Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

■ Finally, Woody and Carr contend that their statements to FBI agent Joyce were made while intoxicated and the use of these statements at trial violated their constitutional rights to remain silent. This argument was considered in a pre-trial hearing on their motions to suppress, and the United States magistrate made factual findings that Woody and Carr were not so intoxicated as to render their statements involuntary or unreliable. The district court admitted the statements and we find no error in that determination.

The jury found Woody and Carr guilty of bank robbery, in violation of federal law, based on admissible evidence in a constitutionally fair proceeding. We, therefore, affirm both convictions.