**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Nestor Julio PEREZ–GARCIA, Sebastian Viera, Jorge Felix Rodriguez, Pedro Luis Rodriguez, Defendants–Appellants.**

No. 88–6159.

United States Court of Appeals,
Eleventh Circuit.

July 10, 1990.

---

John D. Lazarus, Coconut Grove, Fla., for Perez–Garcia.

Richard Straefer, Coral Gables, Fla., for Viera, J.F. Rodriguez and P.L. Rodriguez.

Dexter W. Lehtinen, U.S. Atty., Allan B. Kaiser, Dawn Bowen, Linda C. Hertz, Asst. U.S. Attys., Christopher J. Clark, Miami, Fla., for U.S.

Before FAY and KRAVITCH, Circuit Judges, and KAUFMAN *, Senior District Judge.

KRAVITCH, Circuit Judge:

Four defendants appeal their convictions of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846 and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The appellants challenge a number of the trial court's evidentiary rulings as well as the court's denial of their motions to sever. The appellants also claim that they should have been sentenced under the Sentencing Guidelines. We affirm the convictions, but remand to the trial court for resentencing in conformity with the Sentencing Guidelines.

## I. FACTS

On May 17, 1988, a United States Customs Agent, Thomas Meyer, was patrolling by boat in the area of Key Largo, Florida, when other units in the vicinity reported activity indicative of drug smuggling. Shortly after midnight, Agent Meyer observed a small vessel without lights travelling through a channel toward the shore. He activated his police lights, stopped the vessel and boarded it. One of the individuals on board was identified as Pedro Jose Rodriguez, appellant Pedro Luis Rodriguez's uncle by marriage. Meyer towed the boat to shore because it was riding strangely in the water. The boat was searched by Customs agents who found no drugs, but did find a CB radio. Coast Guard officers issued a citation for operating the vessel without running lights and released the vessel. Agent Meyer also learned, from another Customs unit, of two individuals who were parked in a van at Bayfront Park Marina in Homestead, Florida. These men possessed a trailer with a tag number which corresponded to a trailer receipt found on the boat which Meyer had stopped.

Agent Meyer returned to the vicinity where he had sighted the boat, and at approximately 4:30 a.m., he heard the ignition of large boat engines in the area of the reef line. The boat, a forty-five foot ocean racer travelling without lights, entered the channel in the direction of the sparsely populated shoreline north of Key Largo. Meyer activated his police lights and attempted to stop the boat by blocking its path. The boat continued on its course, forcing Agent Meyer to take evasive action. Eventually, Meyer came up alongside the boat, and he and his crew drew weapons and ordered the boat to stop.

Four men were in the vessel. Appellant Pedro Luis Rodriguez was piloting the vessel. Appellants Sebastian Viera, Jorge Felix Rodriguez and Nestor Perez–Garcia were passengers. When the agents searched the vessel, they discovered ten large packages wrapped in woven plastic material in the cockpit and many more packages in the main cabin. Each package weighed approximately seventy-five to eighty pounds. The name "El Gordo" was written on approximately ten of the packages. An agent inspected the contents of one of the packages and determined that it contained cocaine. Together, the packages weighed approximately 2,596 pounds. Two radios were also found on board. One was a broken CB radio.

The appellants were arrested and taken, along with the vessel, to the Carrysford Marina. They were advised of their *Miranda* rights and were turned over to agents of the Drug Enforcement Administration ("DEA"). Agent Carmen Hartman, an intelligence research specialist with the DEA, interviewed each of the appellants individually. She obtained a statement from appellant Perez–Garcia.

The appellants were jointly indicted of conspiring to possess cocaine with intent to distribute and possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1) respectively. All four appellants were tried together.

At trial, Agent Hartman testified as to the substance of Perez–Garcia's post-arrest

---

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

statement. According to Hartman, Perez–Garcia stated that he was employed as a ranch handler in Colombia by Jose Miguel Abello.[1] He further stated that Abello had introduced him to three Latin males and had asked him to accompany these three men in return for payment of $2000. Perez–Garcia explained that he was driven for three hours to a dirt airstrip in Colombia, where he and the three men were flown to an island. He suspected that the island was Cuba. After landing, Perez–Garcia and the three men loaded cocaine into a boat. Perez–Garcia stated that he had seen similar packages at Abello's ranch which he believed contained cocaine. He identified one of the three Latin males who accompanied him as "El Gordo."

The defense case consisted of testimony by Pedro Rodriguez and Jorge Rodriguez. Viera and Perez–Garcia did not testify. Pedro Rodriguez testified that at 3:30 p.m. on the day preceding his arrest, he met appellants Jorge Rodriguez and Viera. The three men drove to a marina at approximately 5:00 p.m. in order to repair a fuel pump of a friend's boat. The three then rode in the boat along the coastline until one of the two engines failed. They returned to the marina where they fixed the fuel pump. At that time, about 7:30 p.m., two strangers approached them and told them that a boat was disabled offshore and asked them to follow by boat in order to tow the disabled boat back to shore. The three appellants followed the two strangers, who rode ahead of them in another boat, for approximately an hour and a half. The appellants asked to go back, but one of the two strangers threatened them with a gun and ordered them to continue. Shortly thereafter, a fishing boat approached, carrying four or five men. One of the individuals in that boat displayed a revolver and threatened the three appellants, ordering them to help transfer packages from the third boat onto theirs. At this point, a young Colombian from the fishing boat boarded the appellants' boat. He was not armed and did not threaten them. Once the packages were transferred, the men on one of the boats departed and the men on board the remaining boat directed the appellants to follow them to shore. The two boats travelled between an hour to an hour and a half, when one of the engines of the appellants' boat failed. The persons on board the other boat again threatened the appellants to follow them. As the boats continued in the direction of Miami, a Coast Guard boat approached. The boat appellants were following then sped away. Appellant Jorge Rodriguez's account of his activities on May 17 and 18 was consistent with Pedro Rodriguez's account.

The jury returned a verdict of guilty as to all four appellants on both counts of the indictment. The district court sentenced Pedro Rodriguez, Jorge Rodriguez and Perez–Garcia to life sentences, with a five year term of supervised release. Viera was also sentenced to a term of life imprisonment, but with a term of supervised release of ten years.

## II. ISSUES ON APPEAL

### A. Admission of Perez–Garcia's Statement

#### 1. Federal Rule of Evidence 801(d)(2)(E)

Appellants[2] Pedro Rodriguez, Jorge Rodriguez, and Sebastian Viera argue that the district court erroneously admitted Perez–Garcia's post-arrest statement to DEA Agent Hartman against them under Rule 801(d)(2)(E) of the Federal Rules of Evidence, commonly known as the coconspirator exception to the hearsay rule.

Under Rule 801(d)(2)(E), a statement is not hearsay if "[t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." The appellants state that the statement was not

---

**1.** On cross examination of government witness Mark Levine of the DEA, counsel for Perez–Garcia elicited the fact that Abello was known to United States law enforcement as a drug trafficker.

**2.** For purposes of each claim, the word "appellants" will refer only to those defendants raising the claim.

admissible against them because it was not made "in furtherance of" the conspiracy, given that Perez–Garcia confessed to Agent Hartman following the arrest of all of the appellants.

■ The government contends that counsel for appellants Pedro Rodriguez, Jorge Rodriguez, and Viera failed to object to the admission of Perez–Garcia's statement on the basis of hearsay. Our review of the record demonstrates that the government's assertion is correct.[3] The government further asserts that the statement was not admitted by the trial court as an exception to the hearsay rule governing statements made by coconspirators. We disagree. While the judge did not explicitly state that this was the basis for admitting the testimony, he did note, in explaining why he would allow Hartman's testimony as to Perez–Garcia's statement, that "when a conspiracy has been alleged, statements are made throughout the conspiracy that inculpate other individuals." Thus, it appears that the judge was allowing in the testimony pursuant to Rule 801(d)(2)(E).

■ We agree with the appellants that the district court erred in admitting the testimony pursuant to Rule 801(d)(2)(E). Perez–Garcia's statement to Agent Hartman was not made in the course of the conspiracy, as it was made only after both he and his co-appellants had been arrested. At that point, the conspiracy had terminated. *See United States v. Prince*, 883 F.2d 953, 961 (11th Cir.1989); *United States v. Barnes*, 586 F.2d 1052, 1059 (5th Cir.1978).[4]

■ The lack of a contemporaneous hearsay objection requires this court to review the admission of the testimony under the standard of plain error. *See* Fed.R. Crim.P. 52(b); *United States v. Sorondo*, 845 F.2d 945, 949 (11th Cir.1988); *United States v. Hernandez–Cuartas*, 717 F.2d 552, 555 (11th Cir.1983). "Plain error is error which is obvious and which affects a litigant's substantial rights, and should be recognized only where there are exceptional circumstances which require the court to recognize the error to avoid a miscarriage of justice." *Hernandez–Cuartas*, 717 F.2d at 555; *see also, United States v. Walther*, 867 F.2d 1334, 1343–44 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 144, 107 L.Ed.2d 103 (1989); *United States v. Solomon*, 856 F.2d 1572, 1575 (11th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1988).

■ Here, we conclude that the erroneous admission of the testimony against Perez–Garcia's co-appellants does not amount to plain error. As we discuss below in our ruling on the appellants' *Bruton* claim, Perez–Garcia's statement was only indirectly inculpatory, it was not the primary evidence relied upon to impeach the appellants' defenses, and there was sufficient evidence against appellants, introduced through other testimony, to render the trial fundamentally fair, despite the admission of Perez–Garcia's statement.

*2. The Bruton Violation*

■ The appellants also contend that the admission of Perez–Garcia's statement vio-

---

**3.** The colloquy between the judge and counsel regarding Agent Hartman's testimony is confused by the fact that Hartman first testified as to Perez–Garcia's statement and then began to testify regarding her conversation with Pedro Rodriguez. No objection was voiced by counsel during Hartman's initial testimony regarding Perez–Garcia's statement. Hartman was then asked about any statements made to her by other defendants. When Hartman testified that Pedro Rodriguez told her that he went by the name El Gordo, Mr. Kapatanakas, counsel for Pedro Rodriguez, objected. The ensuing conversation between the judge and counsel, out of hearing of the jury, related primarily to whether the government had violated Pedro Rodriguez's Fifth Amendment rights by eliciting his statement identifying himself as "El Gordo" and

whether the government had violated discovery orders by failing to disclose the statement to defense counsel. When the judge stated that the jury was already informed about the nickname through Perez–Garcia's statement, Mr. Kapatanakas stated: "In this case Mr. Lazarus's client [Perez–Garcia] would directly be pointing the finger at my client stating he was a key figure in a Colombian drug deal." We do not read this to be an objection to Perez–Garcia's statement on the basis of hearsay.

**4.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

lated their sixth amendment right of confrontation because the declarant, Perez–Garcia, was unavailable for cross-examination. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the admission of a non-testifying defendant's statement in a joint trial, implicating a codefendant, violated the confrontation clause despite the issuance of a limiting instruction. The Court found that there are certain cases in which even a limiting instruction will not cure the harm to a defendant caused by the admission of inadmissible hearsay. *Id.* at 135, 88 S.Ct. at 1627. The Court noted that such a case is presented "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." *Id.* at 135–36, 88 S.Ct. at 1628.

Here, the question of whether Perez–Garcia's statement falls within the rule of *Bruton* is a close one. The testimony did not include any direct references to Perez–Garcia's codefendants. According to Agent Hartman, Perez–Garcia informed her that three Latin males flew from Co-

lombia to an island with Perez–Garcia, loaded cocaine onto a boat and then got on the boat with Perez–Garcia. Furthermore, one of the three men went by the nickname "El Gordo." [5]

The government argues that the statement is not the powerfully incriminating statement against which the *Bruton* rule offers protection because it only indirectly implicates Perez–Garcia's co-appellants. It is true that this testimony is not "clearly inculpatory standing alone." *United States v. Satterfield*, 743 F.2d 827, 849 (11th Cir.1984). On the other hand, the government made clear, through its cross-examination and closing argument, that the jury was to infer that the three Latin males were Perez–Garcia's codefendants.

The appellants argue that the absence of direct reference to the codefendants is not dispositive. They claim that because Perez–Garcia mentioned only one boat, there is no way that the jury could assume anything but that the three other people apprehended with Perez–Garcia were the ones who accompanied Perez–Garcia from Colombia and loaded the cocaine onto the boat.

---

5. The testimony of Agent Hartman relevant to the appellants' *Bruton* claim was as follows:

Q. What was the context of his [Perez–Garcia's] statement that he told you?
A. He stated that he is a ranch handler in Colombia and his boss approached him and introduced him to three [L]atin males and asked him to accompany one of these [L]atin males. He was going to earn $2,000.

\* \* \* \* \* \*

Q. What did he say about meeting those other individuals?
A. He was directed to accompany this individual or the three [L]atin males. So he drove or they drove like three hours to like a dirt airport where they took up an aircraft. From there they flew to a dirt airstrip.
Q. Did he tell you how long the flight took or where it landed?
A. Well, he wasn't aware of the time that lapsed but he said it was near the beach and he thought it was like an island. He thought it was Cuba.
Q. What happened once he landed in that area?
A. They started loading what they called perrico into a boat that was docked there.

\* \* \* \* \* \*

Q. Did he tell you who loaded that?

A. There were the four [L]atin males.
Q. What happened after it was loaded?
A. They boarded the boat and left.

\* \* \* \* \* \*

Q. Did he [Perez–Garcia] tell by name the people that he met?
A. He mentioned one nickname.
Q. Did he tell you any other names?
A. No, sir.
Q. What was the name of the person that he said that he had met?
A. El Gordo.
Q. When did he tell you that he had met El Gordo?
A. At the ranch.
Q. What did he see El Gordo do at the ranch?
A. Well, he just met El Gordo at the ranch and they proceeded to drive up to the airstrip where the aircraft was there.
Q. How many people did he say got into the aircraft?
A. There were three [L]atin males, Nestor plus the pilot.
Q. When the plane landed, how many people got into the boat eventually?
A. Four people.
Q. Did he tell you the names of the people that got in the boat?
A. He did not know the names, only El Gordo, he mentioned El Gordo.

The Eleventh Circuit has held that "[t]he introduction of a redacted confession may still violate the *Bruton* rule if the statement *compels* a directly inculpating inference." *United States v. Pendegraph*, 791 F.2d 1462, 1465 (11th Cir.), *cert. denied*, 479 U.S. 869, 107 S.Ct. 235, 93 L.Ed.2d 160 (1986) (emphasis added). In this case, we must decide whether the jury was compelled to infer that the "three Latin males" referred to by Perez–Garcia were his codefendants. Such an inference would inculpate the three appellants, insofar as it would contradict their story that they had never been to Colombia and had nothing to do with the cocaine until they were forced to load it onto their boat at gunpoint. It would also link one of the appellants with the name "El Gordo" written on some of the bags of cocaine.

In the instant case, we find that a directly inculpatory inference is not *compelled*, but is only one of the many inferences that the jury could draw from Perez–Garcia's statement. Perez–Garcia did not state that the Latin males who helped load the cocaine into the boat were the same ones with whom he was arrested. Thus, the jury might believe that these men and Perez–Garcia were riding in the fishing boat referred to in Pedro Rodriguez's and Jorge Rodriguez's testimony. The fact that Perez–Garcia did not directly link his codefendants to the three Latin men could lead the jurors to infer that Perez–Garcia still did not know the identity of those who loaded the cocaine.

In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Supreme Court held that *Bruton* does not necessarily require reversal where the codefendant's confession is redacted to omit any reference to the defendant, and the defendant is only linked to the confession

by evidence properly admitted against him at trial. *Id.* at 210, 107 S.Ct. at 1709. In *Marsh*, however, the Court stressed the importance of a limiting instruction, noting that "[s]pecific testimony that 'the defendant helped me commit the crime' is more vivid than inferential incrimination, and hence more difficult to thrust out of mind. . . . [W]ith regard to inferential incrimination the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place." *Id.* at 208, 107 S.Ct. at 1707–08.

In the instant case, the jury was not given an instruction to disregard any incriminating inferences arising from Perez–Garcia's statement to Agent Hartman. This increases the likelihood that the jury "enter[ed] into the path of inference" harmful to Perez–Garcia's codefendants. *Marsh*, 107 S.Ct. at 1708. We find that the potentially inculpatory inference combined with the lack of a cautionary instruction constituted a violation of appellants' rights under *Bruton* and the confrontation clause.

■ Importantly, however, no cautionary instruction was requested by any of the appellants.[6] Hence, we must examine whether the confrontation clause violation stemming from the absence of such an instruction amounts to plain error. As noted above, plain error exists when an error is so obvious that failure to notice it would result in a miscarriage of justice. Appellants argue that the issuance of cautionary instructions to the jury is a sine qua non for finding that erroneously admitted testimony did not exert a substantial influence on the outcome of the trial. We decline to so hold. Contrary to appellants' assertions, we find that Perez–Garcia's state-

---

6. Appellants concede that a limiting instruction was not requested when the statement was introduced at trial, nor did any appellant request any instruction to the jury concerning the applicability of the statement to the other codefendants.

Appellants state that the trial judge had ruled that it was no longer going to entertain objections regarding instructions limiting the introduction of evidence to particular defendants.

In denying a request for a limiting instruction earlier in the trial, the court stated that "with respect to instructing the jury, I am not going to get into a situation where I instruct the jury on ever [sic] little bit of evidence that comes in . . . in considering the case of one defendant or another. . . ." We do not read the trial judge's statement to sweep so broadly as to relieve appellants from all further obligation to request limiting instructions.

ment was not central to the government's case and did not exert a substantial influence on the outcome of the trial.

The appellants argue that the admission constitutes plain error because it was the primary evidence used to impeach the appellants' otherwise consistent version of the events preceding their arrest. This overstates the government's use of Perez-Garcia's statement. Although the government used the statement as a basis for cross-examining one of the defense witnesses, this was done only at the very end of a lengthy cross-examination. The government relied primarily on other means to impeach the testimony of Pedro Rodriguez and Jorge Rodriguez. It questioned, among other things, their statements that they were inexperienced in navigation, that they would be willing to help the strangers who approached them, that they would not try to return to shore, that the boat with the two men on it would not have been capable of towing the fishing boat, and that the people on the fishing boat would trust strangers with cocaine worth 270 million dollars.

Viewing Perez-Garcia's statement in light of all the evidence adduced at trial, we conclude that it was merely another piece of circumstantial evidence of appellants' guilt. The government did not need to rely on the fact that appellants Pedro Rodriguez, Jorge Rodriguez, and Viera were present in Colombia and assisted Perez-Garcia in the loading of cocaine onto a boat in order to prove appellants' guilt. There was ample evidence to connect the appellants to the cocaine in question. First, there was no question that the appellants were the persons found on the boat with over one ton of cocaine. Furthermore, there was ample evidence stemming from the circumstances of the arrest to enable the government to demonstrate that the appellants had the requisite intent to possess.[7] Thus, the fact that Perez-Garcia's testimony may have been construed to

place the four defendants on the boat together from the outset added little to the government's case. Because there was sufficient evidence, absent Perez-Garcia's statement, to support appellants' convictions for conspiracy and possession with intent to distribute cocaine, we find that the court's failure to issue a limiting instruction does not constitute plain error requiring reversal.

**B. Rule 404(b) Evidence**

Appellants Jorge Rodriguez, Pedro Rodriguez, Sebastian Viera and Nestor Perez-Garcia argue that the district court erred in allowing the government to introduce evidence of prior acts of Pedro Rodriguez and Jorge Rodriguez.

During its case in chief, the government introduced two pieces of evidence against the appellants pursuant to 404(b) of the Federal Rules of Evidence. First, Metro-Dade Police Officer Robert Hegg testified that on May 28, 1986, he intercepted two vessels that were heading towards Homestead Bayfront Park in Dade County. He stated that two of the men on the vessels were appellants Pedro Rodriguez and Jorge Rodriguez. The vessels were searched, but no drugs were found, and the officer merely issued a boating violation ticket. On cross-examination by Pedro Rodriguez's counsel, Hegg told the jury that he stopped the vessels because they fit the profile for interdiction purposes and that the Rodriguez appellants' names were in a federal crime computer.

Second, the government presented testimony by Metro-Dade Policeman Jesus Garcia. He testified that on May 30, 1986, while surveilling a house in southwestern Dade County, he saw Jorge and Pedro Rodriguez in front of a house with another man, eventually identified as Jorge Rodriguez's uncle. He observed the three men conversing, after which the uncle left in a car. Pedro and Jorge Rodriguez followed

---

7. Appellants' testimony that they were coerced into carrying the cocaine was contradicted, among other things, by the fact that the cocaine was neatly stacked in the boat and by the fact that appellants made no effort to contact the

Coast Guard. In addition, the government adduced substantial evidence casting doubt on appellants' assertions that they were unable to flee from the hijackers because they were unfamiliar with boat mechanics and navigation.

in a separate car until both cars were stopped by police. A search of the uncle's car uncovered seventy-seven kilograms of cocaine. Appellants Pedro and Jorge Rodriguez were arrested, although the state declined to file charges.

The third piece of evidence relating to prior acts of the appellants was introduced during the government's rebuttal argument. On cross-examination of appellant Pedro Luis Rodriguez, the government questioned him as to whether he was on a vessel with Pedro Jose Rodriguez on January 30, 1987. The government stated that it was offering evidence for the purpose of "credibility association." The appellant answered that he did not remember at any time having been on a boat with Pedro Jose Rodriguez. On rebuttal, the government elicited testimony from Customs Agent Meyer that on January 30, 1987, he boarded a twenty-six foot boat in the vicinity of Bayfront Park. The occupants of that boat were appellant Pedro Luis Rodriguez and Pedro Jose Rodriguez, one of the individuals in the first boat stopped by Agent Meyer on May 17, 1988.

■ Rule 404(b) states that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The decision as to whether to admit or exclude evidence at trial rests squarely within the discretion of the trial judge, and that judge's decision will not be disturbed unless the reviewing court finds that the trial judge abused that discretion. *United States v. Collins*, 779 F.2d 1520, 1531 (11th Cir.1986); *United States v. Dothard*, 666 F.2d 498, 501 (11th Cir.1982).

■ In *United States v. Simon*, 839 F.2d 1461, 1471 (11th Cir.), *cert. denied*, 488 U.S. 861, 109 S.Ct. 158, 102 L.Ed.2d 129 (1988), this court stated that before a court can admit evidence of a defendant's prior act under Rule 404(b), the government must demonstrate: (1) a proper purpose for introducing the evidence, (2) that the prior act occurred and that the defendant was the actor, and (3) that the probative value of introducing the evidence outweighs any prejudicial effect the evidence might have. *See also United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979) (circuit adopts two step test for Rule 404(b) evidence requiring determination of relevance and then weighing of probative value and prejudicial effect).

With regard to the May 28, 1986, incident, appellants object on the basis of relevancy and Rule 404(b). The government stated that it was offering the incident to show that the two people had some association, that they had been on the water before, and that they had been in a particular type of boat before. At trial, there was considerable testimony, relevant to appellants' defense of coercion or lack of intent, relating to the appellants' knowledge of boating, including Pedro Rodriguez's ability to pilot a boat and to navigate, and his familiarity with the area where the boat was stopped by Agent Meyer. We thus find no error in the district court's admission of the evidence.

Appellants argue that even if the purpose for admitting the evidence was proper, the evidence admitted was not limited to these purposes and was thus highly prejudicial. A review of the record indicates, however, that the damaging evidence that the defendants' names were in a federal computer and that their vessel met a narcotics profile was elicited by counsel for Pedro Rodriguez on cross-examination and not by the government. Thus, any prejudice stemming from the evidence was not inherent in the testimony elicited by the government.

■ With regard to the May 30, 1986, incident concerning the stop of appellants' vehicle and their subsequent arrest, the government's stated reason for offering the evidence was to show intent in the instant case. This is a proper purpose for admitting the evidence under Rule 404(b).

The appellants argue that the testimony should not have been admitted because the evidence did not sufficiently establish that the appellants were involved in narcotics trafficking. We have held that the defendant's commission of the extrinsic offense need not be proven beyond a reasonable doubt or even by clear and convincing evidence. *United States v. Astling*, 733 F.2d 1446, 1457 (11th Cir.1984). It is sufficient if the jury could reasonably find from the evidence that the defendant committed the extrinsic offense. *Id.* Given Agent Garcia's testimony as to the circumstances surrounding the arrest, such a finding would be possible in this case.

Appellants further claim that the actions described are highly prejudicial and are not sufficiently probative of Jorge and Pedro Rodriguez's intent in the instant case to justify their admission into evidence. In *Beechum*, the court stated that when an extrinsic offence is offered to prove intent, the offense is relevant if the defendant had the same state of mind for both the extrinsic and charged offenses. 582 F.2d at 911. Furthermore, "[e]vidence of prior drug dealings is highly probative of intent to distribute a controlled substance, as well as involvement in a conspiracy." *United States v. Hitsman*, 604 F.2d 443, 448 (5th Cir.1979). In deciding whether the prejudicial effect of such evidence substantially outweighs the probative value, the court must consider the importance of intent to the case, the similarity of the offenses, the amount of time separating the extrinsic and charged offenses, and the importance of intent to the case. *United States v. Lippner*, 676 F.2d 456, 461–62 (11th Cir. 1982). Here, all factors point to a high probative value of the evidence. While the evidence of Pedro and Jorge Rodriguez's prior activities on May 30, 1986, was prejudicial in that it linked them with prior drug ventures, we find that the trial judge did not abuse his discretion in concluding that the prejudicial effect of the evidence did not substantially outweigh its probative value.

Though we question the trial judge's decision to allow the government to cross-examine Pedro Rodriguez regarding the January 1987 incident,[8] we cannot say that he abused his discretion in allowing such testimony. The government's subsequent rebuttal testimony regarding the incident was not admitted as Rule 404(b) evidence, but was used to impeach Pedro Rodriguez's testimony that he did not remember ever being on a boat with Pedro Jose Rodriguez. The appellants did not object to the rebuttal testimony and we find no abuse of discretion in its admission.

Appellants' final argument is that the evidence of prior bad acts committed by Jorge Rodriguez and Pedro Rodriguez unfairly prejudiced appellant Viera and appellant Perez–Garcia through spillover, and that the district court abused its discretion in admitting such evidence. We find no merit in this contention. The evidence with the greatest potential prejudice was that evidence concerning the seizure of seventy-seven kilograms of cocaine. A cautionary instruction was given, prohibiting the jury from considering this evidence in regard to Viera and Perez–Garcia. No cautionary instructions were given in relation to the two boating incidents in Bayfront Park, but we can imagine no way in which these incidents prejudiced appellant Viera when they clearly involved only Jorge Rodriguez and Pedro Rodriguez and are relevant to show the intent of those two appellants and for purposes of impeachment.

### C. Discovery Violations

Appellants Pedro Rodriguez, Jorge Rodriguez, and Viera claim that the government violated standing discovery orders and Fed.R.Crim.P. 16(a)(1)(A) by failing to disclose (1) the substance of Perez–Garcia's statement to Agent Hartman, (2) Pedro Rodriguez's statement to Hartman that he went by the nickname "El Gordo," and (3) the two incidents that occurred at Bayfront Park Marina that the government introduced at trial. They contend that the use of undisclosed evidence at trial prejudiced

---

**8.** The trial judge found that the questioning, though beyond the scope of direct examination, would aid the jury in making credibility determinations.

their ability to provide a defense and that the district court erred in failing to grant a mistrial on the basis of these discovery violations.

 Violations of Fed.R.Crim.P. 16 and of a standing discovery order will result in a reversal of a conviction only if such a violation prejudiced a defendant's substantial rights. *United States v. Silien*, 825 F.2d 320, 323 (11th Cir.1987); *United States v. Barragan*, 793 F.2d 1255, 1259 (11th Cir.1986). The degree to which a defendant's rights suffer as a result of a discovery violation is determined by considering how the violation affected his ability to present a defense and, to a lesser degree, the weight of all the other evidence introduced. *United States v. Noe*, 821 F.2d 604, 607 (11th Cir.1987). Appellants have failed to demonstrate prejudice sufficient to warrant a mistrial.

 Appellants were made aware of the existence of Perez–Garcia's statement and were informed by the government in its response to their standing discovery order that the government intended to offer Perez–Garcia's oral statement in evidence at trial. Appellants argue that the government's summary of Perez–Garcia's statement was misleading because it made no mention of loading drugs in Colombia and Cuba with three coconspirators, including El Gordo.[9] They maintain that if they had known the substance of the statement, they might have substantially altered their trial strategy. Though we find the government's response to the discovery order misleading and inadequate, any error in the government's failure to furnish a more complete account of Perez–Garcia's statement is harmless in light of the fact that counsel for Perez–Garcia had provided all counsel with copies of his Motion for Severance in August 1988, prior to trial. That motion detailed the contents of Perez–Gar-

cia's statement such that each appellant was made familiar with the details of Perez–Garcia's defense. As such, appellants suffered no prejudice from the government's failure properly to respond to the standing discovery order.

 We also find that the government's failure to disclose Pedro Rodriguez's statement in which he allegedly admitted to being El Gordo did not result in prejudice to the appellants requiring reversal. In response to defense counsel's objection that the statement was given in violation of Pedro Rodriguez's *Miranda* rights, the trial judge suppressed the statement, struck the testimony and issued a cautionary instruction to the jury. Assuming arguendo that a discovery violation did occur, the trial judge's action in striking the statement was sufficient to guard against prejudice to appellant Pedro Rodriguez.

We find no merit to appellants' contentions that the government failed to disclose the 404(b) incidents. The government disclosed to defense counsel the May 30 seizure of cocaine in its response to the standing discovery order and provided information on the May 28, 1986 Bayfront Park Marina incident through an August 5, 1988 supplemental response to its standing discovery order.

## D. Motions for Severance

All appellants contend that the district court erred in refusing to grant their repeated motions for severance. Prior to trial, Perez–Garcia moved to sever on the ground that his defense and that of his codefendants were mutually antagonistic.[10] This motion was joined by all codefendants. Appellant Viera separately moved for severance on the ground that he would be unfairly prejudiced by evidence introduced only against codefendants Pedro Rodriguez

---

**9.** The government's response to the standing discovery order summarized the statement as follows:

> Perez–Garcia said that he was a Colombian and had just arrived in the United States on board the vessel. He indicated he was in the United States illegally.

The government provided a copy of the DEA agent's written summary of the statement only to counsel for Perez–Garcia.

**10.** Perez–Garcia raised his motion for severance before the trial, before the swearing of the jury, after opening statements were completed, following the direct testimony of Pedro Rodriguez, and at the close of the evidence.

and Jose Rodriguez. This motion was joined by Perez–Garcia.

 Rule 8(b) of the Federal Rules of Criminal Procedure provides that defendants who are alleged to have participated in the same acts or transactions constituting an offense may be charged in the same indictment. *See also, United States v. Simon,* 839 F.2d 1461, 1472 (11th Cir.1988). The general rule is that defendants who are jointly indicted should be tried together, and this rule applies with particular force to conspiracy cases. *United States v. Gonzalez,* 804 F.2d 691, 694 (11th Cir. 1986); *United States v. Alvarez,* 755 F.2d 830, 837 (11th Cir.), *cert. denied,* 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985). Nevertheless, defendants may request relief from prejudicial joinder under Fed.R. Crim.P. 14.[11] The decision to grant a motion for severance lies within the sound discretion of the trial judge. *United States v. Pruitt,* 763 F.2d 1256, 1263 (11th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986); *United States v. Magdaniel–Mora,* 746 F.2d 715, 718 (11th Cir.1984). To establish an abuse of discretion, it is not enough for appellant to show that acquittal would have been more likely had he been tried separately. *United States v. Walker,* 720 F.2d 1527, 1533 (11th Cir.1983). Instead, "the defendant must demonstrate that without severance he was unable to receive a fair trial and that he suffered compelling prejudice against which the trial court could offer no protection." *Magdaniel–Mora,* 746 F.2d at 718.

 The assertion of antagonistic defenses may satisfy the test for compelling prejudice. *Gonzalez,* 804 F.2d at 695. To prevail on the claim that severance is warranted due to antagonistic defenses, this circuit has stated that the appellants must show that the defenses were antagonistic to the point of being "irreconcilable or mutually exclusive." *Magdaniel–Mora,* 746 F.2d at 718. In other words, "the essence of one defendant's defense [must be] contradicted by a codefendant's defense." *United States v. Berkowitz,* 662 F.2d 1127, 1134 (5th Cir. Unit B 1981).[12]

 The question of whether Perez–Garcia's defense is irreconcilable with that of his co-appellants is a close one. This court has found defenses to be mutually irreconcilable where the sole defense of each defendant was the guilt of the other, *United States v. Crawford,* 581 F.2d 489, 492 (5th Cir.1978), where codefendants have given contradictory testimony as to their presence at the scene of the crime, *United States v. Johnson,* 478 F.2d 1129, 1132 (5th Cir.1973), or where one defendant incriminated the other at every opportunity. *Gonzalez,* 804 F.2d at 695.

Appellants argue that the instant case is controlled by *Gonzalez,* a case in which the ownership of a boat containing cocaine was central to the issue of intent. Defendant Lopez asserted at trial that his codefendant Gonzalez owned the cocaine, owned the boat on which cocaine was found, and had hidden the key to the vessel in his cellblock. Gonzalez stated that he did not own the boat, and did not hide the key, but had given it to someone else. During the trial, the prosecutor, with the help of Lopez's lawyer, retrieved the key from its hiding place. The court found that, "by offering evidence about Gonzalez hiding the engine key Lopez became the government's best witness." *Id.* at 695. In addition, it found that "Lopez's counsel, in effect, told the jury that Gonzalez was guilty." *Id.*

In the instant case, after opening statements were completed, the district court admonished all counsel that they could not point fingers at codefendants nor argue that a codefendant is guilty. Counsel abided by this admonition. As we noted in our discussion of *Bruton,* Perez–Garcia did not

---

11. Rule 14 states in part:
 If it appears that a defendant or the government is prejudiced by a joinder of offenses or defendants in an indictment or information or by such joinder for trial together, the court may ... grant a severance of defendants.

12. The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

identify the three Latin males who accompanied him to the island and helped him load cocaine. Thus, the jury could conclude that the three Latin men did not refer to Perez–Garcia's codefendants, but were instead the men on board the fishing boat that hijacked the codefendants' boat and forced it to carry cocaine. Furthermore, in his statement as reported by Agent Hartman, Perez–Garcia did not affirmatively maintain that there was no second boat, but apparently concluded his statement to Agent Hartman by saying that he and three others got on "a boat."

Perez–Garcia has an even weaker argument for severance on the basis of antagonistic defenses than his co-appellants. He does not argue that Pedro Rodriguez and Jorge Rodriguez's testimony directly inculpates him or that it directly contradicts his own testimony. Instead, he argues that if the statements by Pedro Rodriguez and Jorge Rodriguez are believed, the jury would have to conclude that his story contained a material omission, and the jury would view that omission as evidence of guilt. The fact that one defendant omits an important element of a story does not render it directly contradictory to a story containing that element. Given the brevity of Agent Hartman's testimony as to Perez–Garcia's statement, the jury could have concluded that many elements of the story were left out.

■ Unlike *Gonzalez*, this was a case in which "the jury could have believed both [sets of] defendants' theories of defense." *Magdaniel–Mora*, 746 F.2d at 715 (quoting *United States v. Stephenson*, 708 F.2d 580, 582 (11th Cir.1983)).[13] Because we find that the jury could reasonably construct a sequence of events that accommodates the essence of all appellants' defenses, we hold that the appellants failed to demonstrate compelling prejudice. Thus, the district court did not abuse its discretion in failing to grant all four appellants' motions for severance.[14]

E. Resentencing

■ The conduct for which appellants were indicted occurred after November 1, 1987, the effective date of the Sentencing Guidelines. *United States v. Burgess*, 858 F.2d 1512, 1513–14 (11th Cir.1988). At the time of appellants' sentencing, however, the United States District Court for the Southern District of Florida was not applying the Guidelines, because it had declared them unconstitutional. *United States v. Bogle*, 689 F.Supp. 1121 (S.D.Fla.1988) (en banc). Since that time, the Sentencing Guidelines have survived constitutional challenge. *See Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). In light of *Mistretta*, this case should be remanded for resentencing in accordance with the Sentencing Guidelines.

We find no merit to appellants Pedro Rodriguez's and Jorge Rodriguez's claim that the PSI contained improper information. Nor do we find that the district court

---

**13.** In *Smith v. Kelso*, 863 F.2d 1564 (11th Cir.), *cert. denied*, ─── U.S. ───, 109 S.Ct.2079, 104 L.Ed.2d 644 (1989), a habeas corpus case in which this court reviewed a state trial court's failure to sever codefendants, the court noted that the Eleventh Circuit:

> has refused to overturn a denial of a motion for severance where each defendant has argued that his own involvement in the crime did not rise to a level justifying culpability. Although a defendant presenting this defense often attempts to bolster it by depicting a co-defendant as the central actor in the crime, we have consistently refused to find that this conflict goes to the heart of the defenses. We have concluded that the jury could decide that neither defendant's involvement had been established beyond a reasonable doubt.

*Id.* at 1569.

**14.** We also reject the contention by appellants Viera and Perez–Garcia that the spillover effect of testimony relating to prior bad acts and offenses of co-appellants Pedro and Jorge Rodriguez constitutes compelling prejudice. We find that the jury could easily "collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct." *United States v. Zicree*, 605 F.2d 1381, 1389 (5th Cir.1979). The judge informed the jury that they were to consider the testimony as to the seventy-seven kilogram cocaine seizure on May 28, 1986 only with respect to Pedro Rodriguez and Jorge Rodriguez. The other two incidents in Bayfront Park Marina clearly did not involve Perez–Garcia and Viera, and there is no reason that the jury would be unable to separate that evidence as it was relevant to each defendant.

erred in sentencing appellant Viera for an enhancement based on his prior conviction for possession of marijuana.

On the basis of the foregoing, the convictions of all appellants are AFFIRMED and the case is REMANDED for resentencing.