### UNITED STATES of America, Plaintiff–Appellee,

v.

### Aaron STROLLAR, Defendant–Appellant.

No. 91–5643.

United States Court of Appeals, Eleventh Circuit.

Jan. 11, 1994.

Sheryl Joyce Lowenthal, Coral Gables, FL, for defendant-appellant.

Steven A. Tyrrell, U.S. Atty., Miami, FL, for plaintiff-appellee.

Before FAY, Circuit Judge, DYER and REAVLEY*, Senior Circuit Judges.

DYER, Senior Circuit Judge:

Strollar appeals his conviction of conspiracy with intent to distribute a substance containing cocaine base (Count 1), possession with intent to distribute a substance containing cocaine base (Count 2), carrying firearms during and in relation to those drug trafficking crimes (Count 3), and possession of a firearm and ammunition by an illegal alien (Count 5)[1]. He maintains that the evidence was insufficient to sustain his conviction on Counts 1, 2 and 3, and that the district court abused its discretion in denying his motions for a severance. We disagree and affirm.

## STATEMENT OF THE CASE

### A. The Government's Case

On August 25, 1990, at approximately 12:15 a.m., officer Sprouse of the Oakland Park Police Department was on routine patrol in a marked police car heading south on Powerline Road in Oakland Park, Florida. As the officer came to a stop in the right-hand lane of Powerline Road, at a traffic signal at the intersection of Oakland Park Boulevard, he observed a four-door, silver Honda stopped in the center southbound lane just in front of his vehicle. The car started to make a right turn from the center lane across the right lane of Powerline Road as if the driver planned to make a right-hand turn onto Oakland Park Boulevard, thus committing a traf-

---

* Honorable Thomas M. Reavley, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Co-defendant Anthony Mells was convicted of Counts 1, 2 and 3. He was also convicted of possession of a firearm and ammunition by a convicted felon (Count 4). The district court granted Mells' motion for a new trial and the government appealed. The appeal was subsequently dismissed on the government's motion.

fic violation. The Honda was similar to a car stolen in connection with an armed robbery the night before. Officer Sprouse decided to follow the Honda while his office checked the license number to determine whether it matched that of the stolen vehicle.

When the traffic signal turned green, the Honda did not turn right, but instead continued south on Powerline Road. Officer Sprouse followed the Honda for about four blocks. During that time the driver of the Honda changed lanes several times in an erratic manner. The two men in the Honda appeared to be having a conversation. Officer Sprouse was notified by his dispatcher that the Honda license tag was different from that of the stolen vehicle. Nevertheless, the officer decided to stop the Honda to determine if the occupants were lost and, if not, to give the driver a warning about his driving.

Officer Sprouse actuated his police lights and siren and pulled directly behind the Honda. He again saw the two occupants conversing. Despite the police lights and siren, the Honda proceeded south for approximately 1.2 miles, continually changing lanes, before it stopped.

Officer Sprouse then approached the Honda on foot. He observed Strollar, the driver, with his hands on the steering wheel, and the passenger, whom he later identified as Mells, move his left arm in a downward motion toward his left leg. It appeared to the officer that the passenger was attempting to conceal something in his hands in his crotch area. The officer became alarmed, drew his weapon, and told the passenger to show his hands. As he did, the officer saw the passenger move his hands in a downward direction and heard a thump. The officer ordered the passenger to remain in the Honda, but instead he got out of the Honda and ran in a westerly direction into a residential area. Strollar got out of the driver's side of the Honda, ignored the officer's order to stop, and ran in an easterly direction into another residential area.

Two other police officers arrived and began to chase the men. Officer Sprouse retrieved his police canine from his police vehicle and chased Strollar, who was shortly apprehended attempting to conceal himself under brush and sand. In the meantime, the other officers were unable to locate the passenger.

On returning to the Honda, Officer Sprouse looked inside and found two loaded handguns on the floor by the front passenger seat and some ammunition. On the front passenger side, he found a film canister and three plastic bags wrapped together in clear plastic wrap containing 66 rocks of cocaine and small quantities of marijuana. On the front passenger seat, the officer found a brown leather wallet with several pieces of identification of Mells, including his Florida driver's license. The officer identified the license photograph as that of the passenger who had just fled the area. Later that night, it was determined that the Honda driven by Strollar had been stolen in an armed robbery several hours earlier in Miami. About ten days later Mells was arrested.

It was established that a rock of cocaine costs ten to twenty dollars and the rocks are sold to distributors in ten packs.

Strollar was born in Jamaica and had not lawfully entered the United States or been naturalized. The two handguns were test fired and found to be operable. One of the handguns and all twelve rounds of ammunition had travelled in interstate or foreign commerce before arriving in Florida.

### B. *The Defense Case*

Strollar rested without presenting any evidence. Although the district court granted Mells' motion for a new trial, which is not now contested by the government, his defense is pertinent to a consideration of Strollar's contention that the district court abused its discretion in denying his motions for a severance. Mells presented an alibi defense. His friends, Smith, Roach, Watson, and his girl friend, Reed, testified as well as did Mells in his own behalf. Mells asserted that he was not a passenger in the Honda at the time the vehicle was stopped. On the contrary, he maintained that on August 24, 1990, at 8:00 p.m., he and Roach had gone to the residence of Smith. There, Mells, Roach,

Smith and Watson had played dominos and consumed liquor and beer.

About 11:30 p.m., a new small gray four-door foreign vehicle, which Mells had never seen before, stopped outside the gate of Smith's residence and the driver got out and approached Smith. The passenger got out, ran into the yard, fired a gun and told everyone to get down.

While Mells was down, someone reached into his pants pocket and took his wallet, which contained his identification papers, including his driver's license and twenty-five dollars in cash.

Mells had never seen the two individuals who committed the robbery, but knew they were Jamaicans. Both Mells and Roach recognized Strollar as the passenger who had come into the yard with a gun. Roach had just spent the weekend in jail with Mells and Strollar. Neither Smith nor Watson identified Stroller as a perpetrator of the robbery.

Mells and his friends had not called the police after the robbery because no one had been hurt. Later, Watson left the Smith residence while Roach, Smith and Mells remained.

At approximately 4:00 a.m., four Jamaican males committed a second robbery at Smith's residence. One of the Jamaicans shot Smith, and the police were called to the scene. When they arrived, Mells and Roach told them about both robberies. Mells said that he hated Jamaicans. Smith and Reed said they had never seen Mells with Strollar or other Jamaicans.

## DISCUSSION

### A. Sufficiency of the Evidence

■ Strollar argues that the court erred in refusing to grant his motion for a judgment of acquittal because the evidence showed his mere presence and flight from the scene, but nothing more. He explained his flight was prompted by his failure to have a driver's license and that he was driving a stolen car. He contends that there was no evidence that he knew about the cocaine. It was found on the passenger's side and the officer had seen the passenger try to conceal it.

■ Whether there was sufficient evidence to support a conviction is a question of law subject to *de novo* review by this court. *See United States v. Keller,* 916 F.2d 628, 632 (11th Cir.1990), *cert. denied,* 499 U.S. 978, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991). In making this determination, this court must review the evidence in the light most favorable to the government, while drawing all reasonable inferences and resolving all credibility choices in the government's favor. *Id.; United States v. Chotas,* 913 F.2d 897, 898 (11th Cir.1990), *cert. denied,* 499 U.S. 950, 111 S.Ct. 1421, 113 L.Ed.2d 473 (1991). The court need not find that the evidence was inconsistent with every reasonable hypothesis of innocence; a jury is free to choose among reasonable constructions of the evidence. *See United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) *(en banc), aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). If any reasonable construction of all of the evidence would permit a finding of guilt beyond a reasonable doubt, the verdict must be sustained. *See United States v. Montes–Cardenas,* 746 F.2d 771, 778 (11th Cir.1984); *United States v. Vera,* 701 F.2d 1349, 1356–57 (11th Cir.1983).

It would serve no useful purpose to iterate the evidence which we have previously fully discussed. Suffice it to say that we are convinced that the evidence was sufficient to sustain Strollar's conviction.

### B. Denial of Motions for a Severance

■ Strollar filed a pretrial motion for a severance from codefendant Mells, pursuant to Fed.R.Civ.P. Rule 14, which he renewed several times during trial. Strollar argues that the district court abused its discretion in denying his motions because Mells' defense was that he was not present in the Honda and that his wallet was stolen in an armed robbery by Strollar. This, he argues, tended to link Strollar to the firearms and the inferences followed that the possession of the firearms was to protect cocaine. This, he says, eliminated his reliance on the government's inability to prove constructive possession of the cocaine and weapons, and undermined any contention that Strollar was un-

aware of the firearms. He asserts that there were mutually antagonistic defenses resulting in compelling prejudice and the denial of a fair trial. We find this postulation unpersuasive.

■ It is within the discretion of the district court to grant a severance. *United States v. Magdaniel–Mora,* 746 F.2d 715, 718 (11th Cir.1984). On appeal, a district court's decision to grant or deny a motion for a severance should not be overturned without a showing of an abuse of discretion. *See United States v. Van Horn,* 789 F.2d 1492, 1505 (11th Cir.), *cert. denied,* 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986).

■ Strollar did not offer any evidence in support of a defense. It is undisputed that he was the driver of the stolen Honda. He simply maintained that the government failed to present sufficient indicia to prove his guilt. Mells offered no evidence directly linking Strollar to the cocaine in the Honda. Strollar was charged with possession of cocaine and firearms at a certain time and place. Mells' alibi defense did not go to the essence of Strollar's plea of not guilty. *United States v. Berkowitz,* 662 F.2d 1127, 1134 (5th Cir. Unit B 1981); *United States v. Perez–Garcia,* 904 F.2d 1534, 1547 (11th Cir.1990); *United States v. Castillo–Valencia,* 917 F.2d 494, 498 (11th Cir.1990), *cert. denied,* 499 U.S. 925, 111 S.Ct. 1321, 113 L.Ed.2d 253 (1991). Moreover, since the jury convicted Mells, there necessarily could be no prejudice to Strollar—the jury simply rejected his defense. Defenses can only be found to be antagonistic if "the jury, in order to believe the core of testimony offered on behalf of [one] defendant must necessarily disbelieve the testimony offered on behalf of his codefendant." *United States v. Esle,* 743 F.2d 1465, 1476 (11th Cir.1984) (per curiam). In any event, Strollar suffered no compelling prejudice because the evidence against him, apart from that presented as support of Mells' alibi defense, was sufficient to maintain his conviction. *Smith v. Kelso,* 863 F.2d 1564, 1571–72 (11th Cir.), *cert. denied,* 490 U.S. 1072, 109 S.Ct. 2079, 104 L.Ed.2d 644 (1989). Strollar's not guilty plea and Mells' alibi defense were not irreconcilable or mutually exclusive. *See, e.g., United States v.*

*Stephenson,* 708 F.2d 580, 582 (11th Cir.1983) (per curiam).

Finally, the Supreme Court has put to rest the question of severance whenever codefendants have conflicting defenses. In *Zafiro v. United States,* —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), the Court held "[m]utually antagonistic defenses are not prejudicial *per se.* Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." (citations omitted). The Court said:

> We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

Citing *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Court went on to say that "less drastic measures [than separate trials], such as limiting instructions, often will suffice to cure any risk of prejudice. *See* 481 U.S. at 211, 107 S.Ct. at 1709."

Apropos to this case, the Court said:

> [E]ven if there were some risk of prejudice, here it is of the type that can be cured with proper instructions.... The district court properly instructed the jury that the government had 'the burden of proving beyond a reasonable doubt' that each defendant committed the crimes with which he or she was charged.... The court then instructed the jury that it must 'give separate consideration to each individual defendant and to each separate charge against him. Each defendant is entitled to have his or her case determined from his or her own conduct and from the evidence [that] may be applicable to him or her'.... In addition, the district court admonished the jury that opening and closing arguments are not evidence and that it should draw no inferences from a defendant's exercise of the right to silence.... These instructions sufficed to cure any

possibility of prejudice. (Citations omitted).

The district court's charge in this case was substantially the same as that quoted in *Zafiro*. Strollar has not shown that his joint trial with Mells subjected him to any legally cognizable prejudice.

## CONCLUSION

We find Strollar's claim of insufficiency of the evidence to convict him to be without merit. We find no abuse of discretion by the district court's denial of Strollar's motions for severance.[2]

AFFIRMED.

2. As an epilogue, we note that on Mells' motion for a new trial, which the district court granted, Strollar, after being advised of his rights, voluntarily testified under affirmation that he was in the vehicle stopped by the police the early morning of August 25, 1990, in which guns and cocaine were discovered; that Mells was not in the car at any time; and that he stole Mells' wallet.