[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 96-3253

_____

D. C. Docket No. 95-132-CR-T-24E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN CASSANO, JOSEPH FORLIZZO,
ANTHONY LANZA a.k.a. Pee Wee,
NICHOLAS J. MUSTO a.k.a. Nicky,
BIAGIO RIGUARDI a.k.a. Bratsee,
and MICHAEL ZAMPARDI,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(January 8, 1998)**

Before EDMONDSON and HULL, Circuit Judges, and CLARK, Senior Circuit Judge.

HULL, Circuit Judge:

Appellants John Cassano, Jr., Joseph Forlizzo, Anthony Lanza, Nicholas J. Musto, Biagio Riguardi, and Michael Zampardi were charged in a multiple count indictment with, inter alia, conspiracy to collect an extension of credit through extortionate means and collecting an extension of credit through extortionate means, both in violation of 18 U.S.C. § 894. Appellants were

convicted on the conspiracy count. Appellant Cassano also was convicted of collecting an extension of credit through extortionate means. This appeal followed with Appellants asserting numerous errors and adopting portions of each co-Appellant's brief.

After review, we find all errors[1] asserted on appeal lack merit. We discuss only whether the government's evidence showed an "extension of credit" under 18 U.S.C. §§ 891, 894 and whether the district court properly denied Appellant Musto's motion for severance and requested jury instruction.

## I. FACTS

The evidence at trial was sufficient to show that all Appellants participated in the conspiracy and employed extortionate means in violation of 18 U.S.C. § 894. Each Appellant's conduct is not enumerated because the main issue discussed requires only the facts necessary to determine whether the transactions here involve an "extension of credit" under §§ 891 and 894.

A.    <u>The Ball Transaction</u>

---

[1]Appellant Cassano contends that the district court erred by increasing his offense level in violation of Sentencing Guidelines §§ 3B1.1(b) and 2E2.1(b)(2)(A); by not giving the jury a multiple conspiracy instruction; by giving a supplemental jury instruction in response to a jury question; by including a summary of the charge on the jury form; and by ruling that the government had not failed to disclose exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Appellant Forlizzo asserts that the district court improperly admitted evidence about La Cosa Nostra and erroneously determined his offense level and amount of restitution. Appellant Lanza challenges the same admission of the La Cosa Nostra testimony and determination that there was no <u>Brady</u> violation.

Appellant Riguardi attacks the district court's finding at sentencing that he played more than a minor role in the offenses charged. Appellant Zampardi contends the evidence was insufficient to support the jury's verdict that he participated in any conspiracy and challenges the district court's sentencing decision that he had more than a minor role in the offense. Appellant Musto contends that there was insufficient evidence that he participated in any conspiracy and that the district court erred by admitting transcripts of statements made in the Forlizzos' limousine; by refusing to apply Sentencing Guideline § 2X1.1; by holding him liable for victim injury; and by denying him acceptance of responsibility.

2

Rick Forlizzo, the brother of Appellant Joseph Forlizzo, requested that accountant Wesley Earl Ball help hide money from Rick's ex-wife. Rick Forlizzo accepted Ball's advice to place the money in an off-shore annuity account. Unbeknownst to Rick Forlizzo, Ball misappropriated a portion of the money for personal use. Before Ball could replenish the account, Rick Forlizzo requested that Ball return the money. Ball informed Rick Forlizzo that the money was tied up and that Ball did not have the necessary paperwork to obtain the money.

Rick Forlizzo believed Ball's representations and tacitly agreed to wait to collect until Ball received the paperwork. Thereafter, Appellant Joe Forlizzo requested that Appellant Cassano obtain the money from Ball. During a subsequent meeting between Ball and Appellants Cassano and Zampardi, Cassano yelled and cursed at Ball and inquired whether Ball was going to procure the paperwork necessary to obtain Rick's money. Ball emerged from the meeting shaken. Later, Rick Forlizzo threatened to have Ball killed and Ball agreed to repay the money.

B.    The Muzio Transaction

Rick and Joe Forlizzo formed American Mobile Imaging ("AMI") with Michael Muzio. Joe Forlizzo later suspected Muzio of stealing from AMI. Contemporaneously, Muzio discussed buying Joe's interest in AMI. Joe Forlizzo accepted Muzio's offer, under which Muzio forwarded to Joe $500,000 in cash, a consulting contract worth $192,000, and accounts receivable worth $267,576. Muzio paid Joe Forlizzo $25,000 when the buy-out agreement was signed.

When the second installment of $125,000 was due, Appellant Joe Forlizzo and others told Muzio that the buy-out agreement was no longer effective and that Joe Forlizzo and others still owned the controlling interest in AMI. They fired Muzio as CEO of AMI and had Muzio evicted. Muzio formed a new business which competed with AMI.

3

At this point, Appellants Cassano, Forlizzo, Musto, Lanza, Riguardi, and Zampardi planned and engaged in extortionate efforts to collect from Muzio. Initially, Muzio asserted he had mafia connections in New York. Appellants delayed collection from Muzio while Appellant Lanza investigated Muzio's representations, which proved to be false.

Ultimately, Appellants forced Muzio to relinquish his interest in AMI. Muzio reluctantly relinquished his interest in AMI, worth approximately $4 million, for $100, which Muzio never received. Appellants also forced Muzio to release $100,000 in certificates of deposit and to pay the balance on a credit card bill. Additionally, Appellants attempted to force Muzio to refer all of his new business to AMI. Appellants became frustrated by their inability to collect from Muzio and with Muzio's failure to refer business to AMI. Appellants finally concocted a scheme to kill Muzio and to loot Muzio's assets before his planned death was discovered.

C.      Appellant Musto

At the close of the government's evidence at trial, Appellants moved for a judgment of acquittal. The district court denied the motions. Appellant Musto announced his intention to rest without presenting any evidence. Appellant Musto requested the district court to sever his trial and later asked for an instruction directing the jury to consider against Appellant Musto only evidence presented during the government's case-in-chief.[2] The district court denied Appellant Musto's requests. Although the co-defendants presented evidence, Appellant Musto's counsel never presented evidence or cross-examined any further witnesses.

## II.  DISCUSSION

---

[2]Appellant Musto did not request the limiting instruction at the same time he requested the severance, but instead later during a bench conference. The request was placed on the record during the court's charge conference. (R43. at 237, 240, 303.)

4

A.      Extension Of Credit Under 18 U.S.C. §§ 891 And 894

Appellants were convicted of conspiring to collect and collecting extensions of credit through extortionate means in violation of § 894(a)(1), which states:

> (a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means
>
>      (1) to collect or attempt to collect any extension of credit . . .

shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

18 U.S.C. § 894(a)(1). Section 891 provides that an "extension of credit" includes any agreement, tacit or express, to defer the repayment or satisfaction of any debt or claim, as follows:

> To extend credit means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred.

18 U.S.C. § 891(1).

Although directed primarily at loan-sharking and organized crime, § 894 is not limited to that conduct or traditional loans. See Perez v. United States, 402 U.S. 146, 147 (1971); United States v. Roberts, 546 F.2d 596, 597 (5th Cir. 1977).[3] "The breadth of the [statute's] language reflects Congress's desire to craft a flexible set of tools for prosecutors . . . ." United States v. Scotti, 47 F.3d 1237, 1244 (2d Cir. 1995) (quoting H.R. Conf. Rep. No. 1397, 90th Cong., 2d Sess. 31, reprinted in 1968 U.S.C.C.A.N. 2021, 2029); see also United States v. Stauffer, 922 F.2d 508, 512 (9th Cir. 1990); United States v. DiPasquale, 740 F.2d 1282, 1288 (3d Cir. 1984).

Although this circuit has not addressed the issue here, other circuit courts have recognized

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent the former Fifth Circuit's decisions prior to October 1, 1981.

an "extension of credit" arising from deferment of payments on not only legitimate investments, joint ventures, checks and credit cards, but also on gambling debts, embezzled money, and even missing drugs or drug proceeds.  See, e.g., United States v. Goode, 945 F.2d 1168, 1170 (10th Cir. 1991) (civil judgment); United States v. Lopez, 803 F.2d 969, 974-75 (9th Cir. 1986) (bad checks); United States v. Polizzi, 801 F.2d 1543, 1557 (9th Cir. 1986) ("debtor" swindled "creditor" on surplus TV deal); United States v. Natale, 764 F.2d 1042, 1045 (5th Cir. 1985) (an investment or joint venture); United States v. McMahan, 744 F.2d 647, 650 (8th Cir. 1984) (check); DiPasquale, 740 F.2d at 1288 (claimed debt); United States v. Brinkman, 739 F.2d 977, 983 n.5 (4th Cir. 1984) (royalty payments);  United States v. Bufalino, 576 F.2d 446, 452 (2d Cir. 1978) (stolen jewels); United States v. Czarnecki, 552 F.2d 698, 703 (6th Cir. 1977) (gambling debt); United States v. Totaro, 550 F.2d 957, 958 (4th Cir. 1977) (checks); Roberts, 546 F.2d at 597 (gambling debts); United States v. Andrino, 501 F.2d 1373, 1377 (9th Cir. 1974) (debts incurred playing cards); United States v. Annerino, 495 F.2d 1159, 1166 (7th Cir. 1974) (unauthorized use of credit cards and theft of partnership funds); United States v. Bonanno, 467 F.2d 14, 16-17 (9th Cir. 1972) (money to purchase drugs subsequently lost).  These circuit courts construe an "extension of credit" under §§ 891 and 894 broadly to encompass any agreement, express or tacit, to defer the repayment or satisfaction of a claim or debt.[4]

---

[4]Appellants emphasize that not every demand for money automatically becomes an extension of credit.  See, e.g., United States v. Wallace, 59 F.3d 333, 340 (2d Cir. 1995) (impatient forbearance until immediate payment was made); United States v. Stokes, 944 F.2d 211, 215 (5th Cir. 1991) (repeated demands for immediate payment); United States v. Boulahanis, 677 F.2d 586, 590 (7th Cir. 1982) ("Section 894 does not make it a crime to use extortion to collect debts, but only to exact repayment of credit previously extended.").  These cases are distinguishable, however, because none involves an agreement to defer repayment or satisfaction of a claim or debt.

1.    The Ball Transaction[5]

Our analysis of the Ball transaction begins with the Fifth Circuit's decision in United States v. Natale, 764 F.2d 1042 (5th Cir. 1985), because it involves similar facts. Like Rick Forlizzo, the Natale defendant gave money to an associate for investment. After time passed, the defendant demanded his money back, but then gave his associate ten days to repay before threatened actions began. Subsequently, the defendant used extortionate means to collect his money.

On appeal, the Natale defendant asserted that there was no "extension of credit" because he recouped only an investment. The Fifth Circuit agreed that the defendant made an "investment" or "joint venture," but held that "[t]he interpretation of the initial agreement does not, however, resolve the question of whether there was an 'extension of credit.' In order to resolve the issue, we must first determine whether there was a claim . . . and second, whether there was an agreement to defer the payment of the claim." Id. at 1045. The Fifth Circuit found that both elements of an "extension of credit" under §§ 891 and 894 existed because a claim arose when the associate failed to comply with the joint venture agreement and the defendant then deferred satisfaction of that claim by affording the associate time to repay. Id.

Likewise Rick Forlizzo had a "claim" against Ball for the return of his money. Appellants also considered Ball to owe Rick money. Thus, in continually giving Ball more time to secure the paperwork to return the money, Rick Forlizzo deferred satisfaction of his claim and "extended credit" to Ball under §§ 891 and 894. Appellants contend that since they were unaware that Ball had embezzled the money, there was no debt or claim, but only a bailment. However, § 891(1) defines

---

[5]Appellants' assertions of no "extension of credit" are both a challenge to the sufficiency of the evidence and to what legally constitutes an "extension of credit" under §§ 891 and 894. We review both issues de novo. United States v. Gonzalez, 122 F.3d 1383, 1386 (11th Cir. 1997).

"extension of credit" in § 894 as an agreement to defer repayment of a debt or claim "whether acknowledged or disputed, valid or invalid, and however arising . . . ." 18 U.S.C. § 891(1). Although unaware of Ball's embezzlement, Rick Forlizzo nonetheless asserted a claim for the money he entrusted to Ball. By deferring repayment or satisfaction of that claim, Rick Forlizzo extended credit to Ball under §§ 891 and 894.

### 2. The Muzio Transaction

The government showed that Joe Forlizzo deferred satisfaction of his claim against Muzio. Despite the Forlizzos and Muzio's having a legitimate business relationship, the circumstances changed when Joe suspected that Muzio had stolen AMI's money. At this point, the Forlizzos had a claim against Muzio. See Polizzi, 801 F.2d at 1557; Annerino, 495 F.2d at 1166.

Thereafter, the Forlizzos assented to Muzio's being given time to satisfy the claim. First, Joe Forlizzo agreed to allow Muzio to buy Joe's interest in AMI over time. Second, Appellants agreed not to attempt to collect, thereby deferring repayment, on the Forlizzos' claim while they investigated Muzio's connections in New York. Finally, Appellants deferred satisfaction of part of the Forlizzos' claim over time by forcing Muzio first to relinquish his interest in AMI, and later to refer his new business to AMI. Thus, Appellants extended credit to Muzio under §§ 891 and 894.

### B. Appellant Musto's Motion For Severance And Jury Instruction

The general rule is that defendants indicted together should be tried together. United States v. Jacoby, 955 F.2d 1527, 1542 (11th Cir. 1992). This rule is particularly applicable to conspiracy cases. Id.; United States v. Alvarez, 755 F.2d 830, 857 (11th Cir. 1985).[6] Appellant Musto must

---

[6]We review the district court's denial of Appellant Musto's motion for severance and jury instruction for abuse of discretion. United States v. Talley, 108 F.3d 277, 279 (11th Cir. 1997); United States v. Tokars, 95 F.3d 1520, 1531 (11th Cir. 1996), cert. denied, 117 S. Ct. 1328 (1997).

demonstrate that without severance he was unable to receive a fair trial and that he suffered actual compelling prejudice. United States v. Schlei, 122 F.3d 944, 984 (11ᵗʰ Cir. 1997). The fact that Appellant Musto may have a better chance at acquittal if tried separately does not alone entitle him to a severance. Zafiro v. United States, 506 U.S. 534, 540 (1993); United States v. Talley, 108 F.3d 277, 280 (11ᵗʰ Cir 1997).[7]

Appellant Musto's motion for severance was made for the first time after the government rested. One basis of Musto's motion was that his culpability was minimal compared to his co-defendants and that a joint trial prejudiced him. A defendant satisfies the compelling prejudice requirement by showing that the jury "was unable to sift through the evidence and 'make an individualized determination as to each defendant.'" Schlei, 122 F.3d at 984 (quoting United States v. Saget, 991 F.2d 702, 707 (11ᵗʰ Cir. 1993)). However, as noted in Schlei, a disparity between the evidence against Musto and his co-defendants is not sufficient to show compelling prejudice, especially if the jury is instructed to, and does consider, each offense and defendant separately:

> The mere fact that there may be an "enormous disparity in the evidence admissible against him compared to the other defendants" is not a sufficient basis for reversal. "A defendant does not suffer compelling prejudice, sufficient to mandate a severance, simply because much of the evidence at trial is applicable only to co-defendants." The district court avoided any potential prejudice by instructing the jury that "[e]ach offense, and the evidence pertaining to it, should be considered separately" and that "each defendant should be considered separately and individually." It is readily apparent that the jury followed these instructions as it acquitted Schlei on eight counts. [One of Schlei's co-defendants] was acquitted on all counts. The verdict demonstrates the jury's ability to sift through the evidence

---

[7]The government and Appellant Musto dispute whether one passage in his counsel's closing argument was based on evidence presented by the government or by a co-defendant. The passage refers to Appellant Forlizzo's offering Musto a job transporting patients. The government contends that this statement was based on co-defendant Forlizzo's testimony, while Musto claims it was based on government witness Hammond's testimony. We do not resolve this dispute because even accepting Musto's argument, the district court did not err.

and make individualized determinations as to each defendant.

Id. (citations omitted).

The record here shows not only that the district court instructed the jury to consider each defendant, each offense, and the evidence pertaining thereto separately, but also that the jury did so. The jury acquitted Rick Forlizzo on all counts, Cassano on all but two counts, and every other Appellant on all but one count. "The verdict demonstrate[d] the jury's ability to sift through the evidence and make individualized determinations as to each defendant." Id.[8] Musto has not shown actual compelling prejudice resulting from any disparity in the evidence.

Nor does Appellant Musto show compelling prejudice from any mutual antagonistic defenses. "The assertion of mutually antagonistic defenses may satisfy the test for compelling prejudice." United States v. Perez-Garcia, 904 F.2d 1534, 1547 (11th Cir. 1990). However, such defenses do not justify severance unless "'the essence of one defendant's defense' [is] 'contradicted by a co-defendant's defense' . . . ." Smith v. Kelso, 863 F.2d 1564, 1568 (11th Cir. 1989) (quoting United States v. Berkowitz, 662 F.2d 1127, 1132-34 (5th Cir. Unit B 1981)). To warrant severance, defenses must be "antagonistic to the point of being 'irreconcilable or mutually exclusive.'" Perez-Garcia, 904 F.2d at 1547 (quoting United States v. Magdaniel-Mora, 746 F.2d 715, 718 (11th Cir. 1984)).

Appellant Musto has not shown any mutually antagonistic defenses between him and his co-defendants. First, Musto does not contend that his co-defendants' evidence inculpated him in any

---

[8]See also Jacoby, 955 F.2d at 1542 ("The jury had no problem in following the court's instructions and in separately evaluating the evidence against each defendant. Although it convicted [the defendant] of the eighteen counts in which he was charged, it convicted [his co-defendant] of only five of sixteen counts.").

criminal acts. Second, Musto's insufficiency of the evidence defense is not irreconcilable with his co-defendants' defenses, especially since they did not incriminate Musto. Third, Musto's novel argument, that the jury's disbelief of his co-defendants probably was considered against him, does not warrant a severance. Mutually antagonistic defenses do not arise just because a co-defendant testifies in his defense and another defendant presents no evidence and defends based on insufficiency of the government's evidence. United States v. Strollar, 10 F.3d 1574, 1578 (11th Cir. 1994); United States v. Magdaniel-Mora, 746 F.2d 715, 719 (11th Cir. 1984).

Alternatively, Musto asserts that the district court should have instructed the jury to consider against him only evidence presented in the government's case-in-chief. The district court was not required to give this jury instruction because, as outlined above, Musto has not shown any prejudice from being tried with his co-defendants. Since the government's evidence was sufficient to convict Musto and even Musto does not contend that his co-defendants' evidence inculpated him, the district court did not abuse its discretion in refusing to give Musto's instruction. Strollar, 10 F.3d at 1578; Magdaniel-Mora, 746 F.2d at 719.[9] In any event, the district court instructed the jury that the government had the burden of proving beyond a reasonable doubt that Musto committed the crime with which he was charged. The court also instructed the jury to consider each defendant and each offense charged separately. The court's instructions were substantially the same as the instruction quoted in Strollar and were adequate here.

For these reasons, the district court properly denied Appellant Musto's motion for severance and requested jury instruction.

---

[9]See also United States v. Bynum, 566 F.2d 914, 928 (5th Cir. 1978); Rickey v. United States, 242 F.2d 583, 586 (5th Cir. 1957).

## III. CONCLUSION

After reviewing all issues raised by each Appellant on appeal, we find no error. Thus, Appellants' convictions and sentences are

AFFIRMED.