[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-16123

_____

D.C. Docket No. 1:10-cr-20753-PAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NEIL FAGAN,
VELDORA ARTHUR,
PAMELA JOHNSON,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(May 7, 2013)

Before MARCUS, BLACK, and SILER,[*] Circuit Judges.

SILER, Circuit Judge:

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Defendants Neil Fagan, Veldora Arthur, and Pamela Johnson were convicted of conspiracy to commit wire and mail fraud and several counts of mail fraud. They appeal their convictions on multiple grounds including the denial of severance and the sufficiency of the evidence. For the reasons that follow, we **AFFIRM**.

## I.

In 2005 and 2006, Fagan entered into several assignable real estate contracts to purchase condominiums at the Hidden Bay complex in Aventura, Florida. He ultimately assigned four contracts to three different buyers, including Arthur, for considerably higher prices than he had negotiated with the sellers of each unit. Johnson, through Service First Title, LLC, served as the settlement agent at each of the four closings. Each transaction involved two different settlement statements (HUD-1 form): one for the seller, listing the original contract price negotiated between Fagan and the seller, and one for the lender, listing a much higher price. The sellers were unaware that Fagan had assigned the contracts for a higher price. In addition, each of the lender's HUD-1s listed a non-existent, unrecorded second mortgage held by either Regus Holdings, LLC or Land America Holdings and Investment Group, LLC, both of which were owned and controlled by Fagan.

2

The loan applications handled by Johnson, and submitted to the lenders, contained false information, including income, assets, and liabilities, about each of the assigned buyers. Johnson falsely represented to the lenders that the closing costs and escrow payments had been made prior to or during closing even though these payments were made subsequent to the loan disbursements. In each sale, after paying the seller the original contract price, Johnson disbursed the remaining loan proceeds to Fagan, or one of his two companies, as a payoff for the mortgage listed on the lender's HUD-1 form. Fagan then used a portion of the proceeds to pay closing costs and make escrow deposits. Fagan also made payments to the assigned buyers, including Arthur, who never invested any of their own money in the purchases. Johnson made several payments from the loan proceeds to her mother.

Fagan, Johnson, and Arthur were indicted and convicted for conspiracy to commit wire and mail fraud and substantive offenses of mail fraud. Co-defendants Patrick Brinson and Earl Silas, who were assigned buyers like Arthur, ultimately pled guilty, while the others went to trial. Fagan was sentenced to 90 months' imprisonment, and Johnson and Arthur were each sentenced to 57 months' imprisonment.

3

## II.

All three defendants sought severance, or mistrial as a result of their joint trial, either before or during trial, or both.  The defendants argue on appeal that the court erred by denying the motions.  We review the district court's decision for an abuse of discretion.  *United States v. Lopez*, 649 F.3d 1222, 1236 (11th Cir. 2011).

The general rule "that defendants indicted together should be tried together . . . is particularly applicable to conspiracy cases."  *United States v. Cassano*, 132 F.3d 646, 651 (11th Cir. 1998).  Trial courts are required to "balance the rights of the defendants and the government to a trial that is free from the prejudice that may result from joint trials against the public's interest in efficient and economic administration of justice."  *United States v. Novaton*, 271 F.3d 968, 989 (11th Cir. 2001) (internal quotation marks omitted).  However, "potential for prejudice" is not enough, and instead, the prejudice must be "compelling."  *Lopez*, 649 F.3d at 1234 (citing *Zafiro v. United States*, 506 U.S. 534, 538, 539-41 (1993)).

The Supreme Court has indicated that joined defendants are only entitled to severance in two situations: where there is a serious risk that a joint trial would either (1) compromise a specific trial right of one of the defendants or (2) prevent the jury from making a reliable judgment about guilt or innocence despite a limiting instruction.  *Zafiro*, 506 U.S. at 539; *Lopez*, 649 F.3d at 1234-35.  Because

4

the defendants have not alleged the denial of a specific trial right, they are limited to showing that the jury was prevented from making a reliable judgment about their guilt or innocence despite the limiting instructions that were given. *Lopez*, 649 F.3d at 1235.

Each defendant argues that the court should have severed their trials because of their mutually antagonistic defenses. Fagan's defense was that his contract assignments were negotiated at arms' length, that he was not involved with the lenders, and that his co-defendants fraudulently completed their loan applications without his knowledge. Johnson's defense was that she was an unknowing conduit for the fraud of her co-defendants and at worst, she conducted her duties negligently. Arthur's defense was that she was given closing documents by Fagan, that she signed them without reading them, and that she relied on Johnson to properly conduct the closings. She argued that she was just trying to make an investment and that Fagan was the sole mastermind behind the fraud.

Even so, "[m]utually antagonistic defenses are not prejudicial *per se*," *Zafiro*, 506 U.S. at 538, because "co-defendants do not suffer prejudice simply because one co-defendant's defense directly inculpates another, or it is logically impossible for a jury to believe both co-defendants' defenses." *United States v. Blankenship*, 382 F.3d 1110, 1125 (11th Cir. 2004). Instead, "a defendant must show that the joint trial caused him such compelling prejudice that he was deprived

5

of a fair trial." *United States v. Hill*, 643 F.3d 807, 834 (11th Cir. 2011) (citing *Zafiro*, 506 U.S. at 537-41).

The defendants have failed to make this showing. Johnson simply asserts that their defenses were mutually antagonistic and therefore they suffered the requisite prejudice. This falls far short of showing "compelling prejudice." Fagan's argument relies exclusively on pre-*Zafiro* cases and fails to recognize the standard pronounced in *Zafiro*. Fagan has failed to give any specific examples of how he or the other defendants suffered compelling prejudice as a result of the joint trial.

Arthur argues that she suffered specific prejudice because Fagan's counsel acted as a second prosecutor and pursued a closing argument against her that the government chose to forgo or could not make in good faith. In order to grant a new trial based on a co-defendant's closing argument, we must find the argument "both improper and prejudicial to a substantial right of the defendant." *United States v. Garcia*, 405 F.3d 1260, 1272 (11th Cir. 2005) (internal quotation marks omitted). When a curative instruction is given, we will reverse "only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." *Id.* (internal quotation marks omitted). Here, the court indeed instructed the jury that opening and closing arguments by the lawyers were not evidence.

The comments Arthur complains of do not rise to the necessary level, as indicated by the fact that Arthur's counsel failed to object during Fagan's closing argument.   Additionally, the district court gave the precise limiting instructions suggested by the Supreme Court for use in a joint trial.  *See Zafiro*, 506 U.S. at 540-41.  This cured any potential prejudice because "juries are presumed to follow their instructions."  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  Thus, the district court did not abuse its discretion in denying the defendants' requests for severance and mistrial.

### III.

We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict and making all inferences and credibility determinations in favor of the verdict.  *United States v. Chirino-Alvarez*, 615 F.3d 1344, 1346 (11th Cir. 2010).

### A.    *Count One: Conspiracy*

Fagan and Johnson argue that the government failed to present sufficient evidence to support their convictions for conspiracy in count one of the indictment. The elements of conspiracy to commit mail or wire fraud include: "(1) agreement between two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in that agreement by the defendant; and (3) an overt act in

7

furtherance of the agreement." *United States v. Broughton*, 689 F.3d 1260, 1277 (11th Cir. 2012). "A defendant's knowing participation in a conspiracy may be established through proof of surrounding circumstances such as acts committed by the defendant which furthered the purpose of the conspiracy." *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983). Thus, agreement and participation do not have to be explicit, but may be "inferred from circumstantial evidence." *United States v. Prince*, 883 F.2d 953, 957 (11th Cir. 1989).

The evidence presented at trial overwhelmingly supported the defendants' convictions. There were wire transfers, faxes, and mailings connected to the fraud in which both Fagan and Johnson knowingly participated. Additionally, both Fagan and Johnson financially profited from the conspiracy. The circumstantial evidence of Fagan's otherwise unexplained payments to Brinson, $105,000, and Arthur, $316,000, were enough to show that there was an agreement and that Fagan participated in the scheme. Johnson's three checks to her mother from the loan proceeds of units 3615 and 3711, totaling approximately $22,000, necessarily inculpated her in the scheme as well.

## B.    Counts Two through Five: Mail Fraud

Mail fraud consists of "(1) an intentional participation in a scheme to defraud a person of money or property, and (2) the use of the mails in furtherance

of the scheme." *United States v. Downs*, 870 F.2d 613, 615 (11th Cir. 1989). Fagan and Arthur first argue that the government failed to present evidence that there was an interstate carrier involved and that even if there was, the government failed to prove what was sent and why. This argument is meritless. The government submitted evidence demonstrating that essential documents were either sent via facsimile or mailed through an interstate carrier. Specifically, the evidence at trial showed that documents necessary to the closings were sent via Federal Express and DHL from Johnson to each of the lenders. The receipt of these documents was verified by evidence showing that the lenders' files included the executed closing records.

Second, Fagan and Johnson[1] argue that the evidence against them in counts two through five was insufficient because they did not provide, or even know about, the false information on the loan applications. They contend that they were not involved in any agreement to defraud and that they were unaware of the other co-defendants' acts and intentions. These arguments are also meritless. The evidence at trial overwhelmingly indicated that both Fagan and Johnson intentionally participated in the scheme to defraud. For each sale, Johnson falsely

---

[1] Arthur has attempted to adopt the sufficiency arguments raised by her co-defendants. However, "the fact-specific nature of an insufficiency claim requires independent briefing" to reach the merits where the defendants performed different roles and the evidence against each differs. *United States v. Khoury*, 901 F.2d 948, 963 n.13 (11th Cir. 1990). Accordingly, Arthur's attempt to adopt Fagan's and Johnson's sufficiency arguments is not allowed.

represented to the lenders that closing costs and escrow payments were made before or during closing. Additionally, Johnson included Fagan's non-existent and unrecorded mortgages on the lender's HUD-1s for each sale. Johnson also submitted two different HUD-1s for each sale, indicating vastly different prices and non-matching mortgages. Most importantly, Johnson received approximately $22,000 from Fagan for her participation in the scheme.

For his part, Fagan accepted substantial loan disbursements for non-existent mortgages and then used that money to pay the closing costs and escrow deposits for properties in which he was not the purchaser. Additionally, Fagan allowed Johnson to take approximately $22,000 of the loan proceeds for her part in the scheme. Thus, the direct and circumstantial evidence presented against Fagan and Johnson substantially supports their convictions for counts two through five.

## IV.

The defendants have raised a litany of additional trial errors, some that were objected to at trial, and some that were not. First, Fagan and Arthur contend that the district court erred by limiting their presentation of evidence at trial, including the court's exclusion of testimony and Arthur's polygraph evidence. We have carefully reviewed the record and find this contention to be without merit. The

10

court acted within its sound discretion when it excluded this evidence at trial. *United States v. Tobin*, 676 F.3d 1264, 1272 (11th Cir. 2012).

Next, Arthur argues that the government's expert witness, Reuben Schneider, made a comment on cross-examination that required a mistrial. Schneider testified that he thought that the defense should have to prove that the signatures purporting to be that of Arthur's were in fact not hers. The court admonished Schneider and gave the jury a curative instruction. Any error here was cured by the court's instruction. *See Richardson*, 481 U.S. at 211 (juries are presumed to follow their instructions).

Third, Arthur argues that the court committed reversible error when it failed to timely give a curative instruction for the improper questioning of her character witness, Kamal Rashad. Although the court did not immediately give a curative instruction, Rashad's refusal to accept the premise of the guilt-assuming hypothetical question and the court's curative instruction, given at the next day of trial, rendered any error here harmless. *See United States v. Guzman*, 167 F.3d 1350, 1353-54 (11th Cir. 1999) (holding the government's use of guilt-assuming questions to a character witness on cross-examination to be a harmless error because of the witness's defusing response and the strong evidence against the defendant).

11

Fourth, Arthur argues that the government made several improper comments in its rebuttal during closing arguments.  Some of the comments raised on appeal were objected to at trial, while some were not. Claims of prosecutorial misconduct ordinarily are reviewed *de novo*; however, if not raised below, review is limited to plain error review.  *United States v. Merrill*, 513 F.3d 1293, 1306-07 (11th Cir. 2008).  For comments by the prosecutor during closing arguments to constitute reversible prosecutor misconduct, the comments must have been improper and there must be a reasonable probability that, but for the remarks, the outcome of the trial would have been different.  *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006).  We have carefully reviewed the record and find that any error here was harmless and cured by the court's curative instruction.  Moreover, the evidence against Arthur was overwhelming and thus reversal would be inappropriate. *See id.*

Fifth, Arthur argues that the district court's rulings and comments demonstrated an appearance of partiality and bias against her.  To determine if a judge gave the appearance of partiality or bias at trial we ordinarily review the conduct for an abuse of discretion.  *United States v. Verbitskaya*, 406 F.3d 1324, 1337 (11th Cir. 2005).  However, because the objection was not raised below, the claim is reviewed only for plain error.  *United States v. Rodriguez*, 627 F.3d 1372,

1379-80 (11th Cir. 2010). We have carefully reviewed the record and find Arthur's contention to be without merit.

Sixth, Arthur argues that the court should have given her proposed theory-of-defense instruction. We review rulings on proposed jury instructions for an abuse of discretion. *Tobin*, 676 F.3d at 1272. Arthur's argument here is meritless. "District courts have broad discretion in formulating jury instructions," *United States v. Mintmire*, 507 F.3d 1273, 1293 (11th Cir. 2007), and are "not bound to use the exact words and phrasing requested by defense counsel," *United States v. Gonzalez*, 975 F.2d 1514, 1517 (11th Cir. 1992). Upon review, we "need only ascertain whether the charge, when viewed as a whole, fairly and correctly states the issues and the law." *Id.* Here, the good faith instruction given by the court sufficiently addressed Arthur's defense according to the evidence that was presented and the available defenses under the law.

Seventh, Arthur asserts that the district court improperly commented about making a record for appeal. Any error here was cured when the court clarified to the jury that a clear record would need to be made for review, no matter the outcome of the case.

Eighth, Arthur contends that the government violated Rule 16 of the Federal Rules of Criminal Procedure by failing to give her notice of its intent to introduce

her 2006 federal tax return into evidence.  Arthur has failed to show any prejudice here.  Although she claimed that she filed an amended return that would have countered the government's purpose for admitting the return—to show she was hiding the $316,000 payment she received from Fagan—she failed to produce any documentary evidence of an amended return or request further time to counter the government's evidence.

Lastly, all three defendants argue that the accumulation of errors committed at trial entitle them to a reversal of their convictions and a new trial.  In light of the small number of errors committed at trial, the curative and limiting instructions given by the court, and the weight of the evidence against the defendants, we reject this argument.

**AFFIRMED**.

14